STATE OF MINNESOTA

IN SUPREME COURT

A22-0911

Court of Appeals                                                                    McKeig, J.
                                               Concurring, Thissen, Procaccini, JJ.

Anoka County, Anoka, Minnesota,

            Respondent,

vs.                                                        Filed:  March 6, 2024
                                                       Office of Appellate Courts

Law Enforcement Labor Services, Inc.,
Brooklyn Center, Minnesota,

            Appellant,

Bureau of Mediation Services,

            Respondent.

_____

Scott M. Lepak, Jennifer C. Moreau, Barna, Guzy & Steffen, Ltd., Coon Rapids, Minnesota, for respondent Anoka County.

Renee Zachman, Scott Higbee, Law Enforcement Labor Services, Inc., Brooklyn Center, Minnesota, for appellant.

Keith Ellison, Attorney General, Corinne Wright, Assistant Attorney General, Saint Paul, Minnesota, for respondent Bureau of Mediation Services.

_____

S Y L L A B U S

1.      When considering a petition to certify an appropriate bargaining unit, the Bureau of Mediation Services must first consider whether the petitioned-for unit is an appropriate unit before considering an alternative proposal.

1

2.	The Bureau of Mediation Services is allowed to consider overfragmentation as a relevant factor when determining an appropriate bargaining unit.

3.	When the Bureau of Mediation Services is determining an appropriate bargaining unit, a four-unit policy preference not specifically enumerated in Minnesota Statutes section 179A.09 (2022) may not control over specifically enumerated statutory factors or carry greater weight than those factors section 179A.09 requires that the Bureau must place particular importance upon.

Reversed and remanded.

O P I N I O N

McKEIG, Justice.

The Bureau of Mediation Services (the Bureau) is a state agency whose role is to facilitate a constructive labor-management environment.  *See* Minn. Stat. §§ 179.02, 179A.04 (2022).  One of the Bureau's functions included in the Public Employment Labor Relations Act (PELRA), *see* Minn. Stat. §§ 179A.01-179A.25 (2022), is to make bargaining unit determinations for public employees.  *See* Minn. Stat. § 179A.04, subd. 2. This appeal is from a unit determination order issued by the Bureau that found the petitioning employees' proposed unit to be inappropriate, while finding the employer's preferred unit to be the appropriate unit.

Clerical and technical employees from the Anoka County Sheriff's Office, through their chosen representative, Law Enforcement Labor Services, Inc. (the Union), submitted a petition to the Bureau to determine an appropriate collective bargaining unit.  Their employer, Anoka County (the County), opposed the unit, arguing for a county-wide clerical

2

and technical employee unit. The Bureau found the County's unit to be the appropriate choice because, among other considerations, the employees' proposed unit was not one of the four basic county units preferred by the Bureau. The court of appeals affirmed, holding that the Bureau had appropriately weighed the statutory factors found in PELRA, the Bureau was authorized to consider overfragmentation of bargaining units in its analysis, and the Bureau had not departed from its normal procedure in analyzing the employees' petition. Because the Bureau gave controlling weight to a four-unit policy preference not found in PELRA, we reverse and remand.

## FACTS

In November 2021, the Union submitted a petition to the Bureau to determine an appropriate bargaining unit for certain clerical and technical employees of the Anoka County Sheriff's Office. After two amendments to the petition, the final unit proposed by the Union was "[a]ll clerical and technical employees of the Anoka County Sheriff's Office, Anoka County, Minnesota, who are public employees within the meaning of Minn. Stat. 179A.03, subd. 14, excluding supervisory, confidential, and all other employees." The County notified the Bureau that it considered the Union's proposed unit to be inappropriate and proposed that the only appropriate unit was a broader, county-wide unit of all non-exempt clerical and technical employees. Six of the position titles from the Union's proposed unit overlapped with employees from the proposed county-wide unit, so the County expressed concerns that those employees in overlapping positions *not* employed by the Sheriff's Office would be left out of the bargaining process. The County also noted

3

that it already had 11 existing bargaining units, and adding smaller units such as the one proposed by the Union would lead to the "undue proliferation" of units.

A hearing was held before a Bureau hearing officer at the Sheriff's Office in April 2022. The parties stipulated to specific questions to be answered by the hearing officer, the pertinent two of which were: 1) "Whether the petitioned for bargaining unit is an appropriate bargaining unit;" and 2) "If not, what is the appropriate bargaining unit?" Stipulated exhibits were received into evidence, each party presented witnesses, and the record was left open for the parties to submit written follow-up briefs, which both parties did. The Bureau issued its decision in June 2022, finding that: 1) "The Union's proposed bargaining unit is **not** an appropriate unit;" and 2) "The appropriate bargaining unit is: 'All clerical and technical employees of Anoka County, who are public employees within the meaning of Minn. Stat. §179A.03, Subd. 14, excluding the appraiser, senior appraiser, professional, supervisory, confidential, essential and all other employees.' "

On certiorari appeal, the Union argued that the Bureau made numerous errors of law, including coming to arbitrary and capricious conclusions when analyzing statutory unit determination factors, inappropriately comparing the two proposed bargaining units, and improperly concluding that certification of the Union's proposed unit would result in overfragmentation. The court of appeals affirmed, holding that "[the Bureau] properly identified and considered the statutory community-of-interest factors set forth in Minn. Stat. § 179A.09 and the risk of overfragmentation" when determining the appropriate unit. *Anoka Cnty. v. L. Enf't Lab. Servs., Inc.*, No. A22-0911, 2023 WL 2564408, at *7 (Minn. App. Mar. 20, 2023). Recognizing the deferential standard of review given to state agency

decisions, the court of appeals also found that the Bureau did not depart from its normal procedure when evaluating the Union's petition. *Id.* Although the court did note that the Bureau "appeared" to directly compare the unit proposed by the Union to the one proposed by the County, the court ultimately concluded that the Bureau followed its normal procedure by first evaluating the Union's proposals before examining those presented by the County. *Id.* We granted the Union's petition for further review.

**ANALYSIS**

The Union makes a number of arguments that the decision of the court of appeals should be reversed, presenting three questions. The first question is whether the Bureau's unit determination conformed with its prior norms and decisions. The second question is whether the Bureau improperly considered overfragmentation when determining an appropriate bargaining unit based on obsolete case law or an incorrect reading of PELRA. The third question is whether the Bureau gave inappropriate weight to a policy preference of only certifying four basic county bargaining units. We address each question in turn.

I.

We first address whether the Bureau adhered to its prior norms and decisions when analyzing the Union's proposed bargaining unit. Mindful of the separation of powers doctrine, we have long held that "[c]onstitutional principles . . . require that the judiciary refrain from a de novo review of administrative decisions." *Dokmo v. Indep. Sch. Dist. No. 11, Anoka-Hennepin*, 459 N.W.2d 671, 674 (Minn. 1990). So, "decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training,

5

education, and experience." *Rsrv. Min. Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977). However, "[w]e may reverse or modify the decision of an administrative proceeding . . . if the findings, inferences, or conclusions are arbitrary or capricious, or are unsupported by substantial evidence in view of the entire record as submitted." *In re Reichmann Land & Cattle, LLP*, 867 N.W.2d 502, 512 (Minn. 2015) (citation omitted) (internal quotation marks omitted). Therefore, if it appears that an agency has not taken a hard look at the issue before them nor engaged in reasoned decision-making, we will intervene. *Id.* Nevertheless, "[t]he appellant bears the burden of establishing that the agency findings are not supported by the evidence in the record." *In re Rev. of 2005 Ann. Automatic Adjustment*, 768 N.W.2d at 118.

PELRA is meant to "promote orderly and constructive relationships between all public employers and their employees." Minn. Stat. § 179A.01(a). The Legislature has established, in relevant part, that this goal is best accomplished by "(1) granting public employees certain rights to organize and choose freely their representatives; [and] (2) requiring public employers to meet and negotiate with public employees in an *appropriate* bargaining unit." Minn. Stat. § 179A.01(c)(1)–(2) (emphasis added).

One of the Bureau's duties is to "determine appropriate units, under the criteria of section 179A.09." Minn. Stat. § 179A.04, subd. 2. The statute sets out the criteria in section 179A.09 as follows:

> In determining the appropriate unit, the commissioner shall consider the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, history, extent of organization, the

recommendation of the parties, and other relevant factors. The commissioner shall place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives.

Minn. Stat. § 179A.09, subd. 1 (2022).[1] The Bureau *must* consider these statutory factors when making an appropriate unit determination under PELRA. *See id.* (stating "the commissioner *shall* consider . . ." (emphasis added)); Minn. Stat § 645.44, subd. 16 (2022) (defining "shall" to mean mandatory). When evaluating the statutory factors, the Bureau must "conform to its prior norms and decisions" absent a rational explanation for the departure. *See In re Rev. of the 2005 Ann. Automatic Adjustment of Charges for All Elec. & Gas Utilities*, 768 N.W.2d 112, 120 (Minn. 2009) ("[A]n agency must generally conform to its prior norms and decisions or, to the extent that it departs from its prior norms and decisions, the agency must set forth a reasoned analysis for the departure that is not arbitrary and capricious.").

The Union argues that the Bureau improperly departed from its past norms and decisions when analyzing the employees' proposed unit. Specifically, the Union claims that rather than considering whether the proposed unit was "an" appropriate unit, the

---

[1] In its briefs to this court and in many of its unit determination orders, the Bureau refers to these statutory factors as "community of interest factors." *See, e.g.*, *Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989, at 6 (June 2, 2022); *City of Winona & Int'l Ass'n of Firefighters, Loc. 575*, BMS Case No. 07-PCL-0325, at 4 (Dec. 7, 2006). This is evidently because the Bureau applies "community of interest *standards*" in its analyses with the goal of "rendering unit determinations that promote effective and harmonious long-term collective bargaining relationships between union and management." *Hennepin Cnty. Econ. Assistance Supervisor's Ass'n & Hennepin Cnty.*, BMS Case No. 99-PCE-1585, at 5 (Nov. 12, 1999) (emphasis added) (citation omitted). We have not adopted, nor have we endorsed, the term "community of interest factor," and we will refer to the factors listed in PELRA simply as the statutory factors.

7

Bureau instead considered whether the unit was the "most" appropriate unit, directly comparing it to the County's proposed bargaining unit. We have previously held that, consistent with customary agency practice, the Bureau must first consider the proposals of a petitioning union, stating:

> Because it is the union which is seeking to establish rights under the statute—and since the standard is "an" appropriate unit, rather than the "most" appropriate unit—when confronted with employer-union contentions over the boundaries of the appropriate unit, it is customary for administrative agencies to examine the proposals of the union first. It is only when the union's proposals are rejected as "inappropriate" that it becomes necessary to examine those presented by the employer.

*In re Hill-Murray Fed'n of Tchrs. v. Hill-Murray High Sch.*, 487 N.W.2d 857, 867 (Minn. 1992).

In this case, an analysis of the Bureau order reveals one instance in which the language is clearly suggestive of a direct comparison between the units proposed by the Union and the County.[2] But the Bureau analyzed all the other statutory factors by comparing each party's *position*, rather than comparing the proposed units themselves. In other words, the Bureau generally followed its established practice of first examining the proposals of the Union. *See L. Enf't Lab. Servs., Inc., & City of Wabasha*, BMS Case No. 18-PCE-0706, at 4–7 (June 13, 2018) (finding seven factors in favor of the union's position

---

[2] The second statutory factor is "professions and skilled crafts, and other occupational classifications." Minn. Stat. § 179A.09, subd. 1. When analyzing this factor, the Bureau stated, "The skills, crafts, and occupational classifications of the employees [the Union] proposed for inclusion into the bargaining unit are wide-ranging and diverse. *The employees the County is proposing make up the bargaining unit* are also wide-ranging and diverse." *Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989, at 7 (June 2, 2022) (emphasis added). The Bureau ultimately determined this factor to be neutral.

and one neutral); *IBEW, Loc. 160 & City of Truman*, BMS Case No. 20-PCL-1339, at 3–4 (Aug. 17, 2020) (finding one factor favoring the city's position, four favoring the union's position, and two neutral); *IUOE, Loc. No. 49 & City of Big Lake*, BMS Case No. 17-PCL-0678, at 3–7 (May 10, 2017) (finding three factors favoring the city's position, four favoring the union's position, and two neutral); *City of Elk River & IUOE, Loc. No. 49*, BMS Case No. 16-PCE-0323, at 3–6 (Jan. 14, 2016) (finding three factors favoring the city's position, three favoring the union's position, and three neutral).

The Union persuasively argues that simply because a factor favors the employer, it does not necessarily mean that the factor *disfavors* the union. Although the point is well taken, we believe that the way the parties crafted the stipulated issues has created confusion about the Bureau's order. In particular, the parties asked the Bureau to determine not only whether the Union's proposed unit was appropriate, but also to determine the unit that *would* be appropriate if the Union's proposed unit was inappropriate. There are areas of the Bureau's order where an inference could be made that there was an improper head-to-head comparison between the petitioned-for bargaining unit of the Union and the alternative unit proposed by the County. But a contrary inference could also be made that the Bureau analyzed the Union's proposed unit first, found the unit inappropriate, and then went on to analyze other potential units. Aside from the single direct unit comparison noted above concerning the second statutory factor, the record does not show with certainty that the Bureau departed from its past practices here.

Though perhaps we would have come to different conclusions were we to analyze the facts within these statutory factors ourselves, it appears from the record that the Bureau

9

engaged in reasoned decision making, and we are wary of nitpicking the reasoning of state agencies. *See In re Reichmann Land & Cattle*, 867 N.W.2d at 512 ("We will affirm agency conclusions even if we may have reached a different conclusion if we were the factfinder.").

Here, we do not conclude that the Bureau improperly compared the Union's proposed unit to that of the County's. Going forward, however, we caution the Bureau against using a head-to-head comparison method absent a reasoned analysis and explanation for the departure. As we explained in *Hill-Murray* and as the Bureau itself has recognized, "the Bureau's role is to determine *an* appropriate unit, not *the most* appropriate unit." *Indep. Sch. Dist. No. 709 & Non-Certified Supervisory Ass'n & Educ. Dirs. Ass'n*, BMS Case No. 87-PR-161, at 8 (July 22, 1987); *see Hill-Murray Fed'n of Tchrs.*, 487 N.W.2d at 867.

II.

We next determine whether the Bureau may consider overfragmentation when it analyzes PELRA's statutory factors when making a unit determination. The concept of overfragmentation, as described by the Bureau, is that "a bargaining structure of individual departments . . . would lead to fragmented bargaining disadvantageous to the employees, the union, and the employer . . . [and] there [is] a distinct balance between the narrow community of interest of some employees and the excessive fragmentation of the bargaining structure." *Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989, at 6 (June 2, 2022).

10

The Union claims that the Bureau has improperly extended a holding from our nearly 50-year-old decision in *Minn. State Coll. Bd. v. Pub. Emp. Rels. Bd.*, 228 N.W.2d 551 (Minn. 1975), when considering overfragmentation in the unit determination analyses. Interpretation of case law is a legal question that we review de novo. *State v. Robideau*, 796 N.W.2d 147, 150 (Minn. 2011).

*Minnesota State College Board* analyzed an appeal related to the determination "that the appropriate bargaining unit for faculty members employed at the seven state colleges [was] a single state-wide unit." 228 N.W.2d at 553. When *Minnesota State College Board* was decided, PELRA contained a method of determining units for state employees distinct from other public employees.[3] *See* Minn. Stat. § 179.74, subd. 4 (1974) ("[T]he director of mediation services shall define appropriate units of state employees as all the employees under the same appointing authority except where professional, geographical or other considerations affecting employment relations clearly require appropriate units of some other composition."). The Union argues that because our decision in *Minnesota State College Board* contemplated state employees, the court could have only been discussing state employees in the context of Minn. Stat. § 179.74, subd. 4 (1974), when discussing PELRA. We disagree.

In analyzing the issue presented in *Minnesota State College Board*, we stated:

The purpose behind the PELRA and its incidents promoting collective bargaining is that those engaged in common occupations, in the instant case

---

[3]    PELRA was recodified in 1984. *See* Act of Apr. 24, 1984, ch. 462, 1984 Minn. Laws 235 (codified as Minn. Stat. §§ 179A.01–179A.25 (2022)). Through the recodification, both the purpose behind PELRA and the statutory factors remained substantively unchanged.

11

faculty members at the state colleges, with common goals and problems should bargain together for particular demands. Obviously, the Act and its statutory coordinates attempt to eliminate the 'overfragmentation' which might result from the certification of individual bargaining units.

228 N.W.2d at 561 (citation omitted). We did not limit our discussion of overfragmentation to confine the concept to state employees *only*. *See id.* In fact, when discussing the "purpose behind" PELRA, we even highlighted that the case at bar was discussing a narrower subset of state college employees rather than the many more public employees included within the full scope of PELRA. *See id.* ("[I]n the instant case faculty members at the state colleges . . . .").

Moreover, independent of our opinion in *Minnesota State College Board*, the plain language of PELRA itself provides the Bureau with authority to consider overfragmentation as part of the unit determination analysis. We review questions of law and statutory interpretation de novo. *State v. Wigham*, 967 N.W.2d 657, 662 (Minn. 2021). "When determining the plain and ordinary meaning of undefined words or phrases in a statute, courts should look to the dictionary definitions of those words and apply them in the context of the statute." *State v. Haywood*, 886 N.W.2d 485, 488 (Minn. 2016).

In addition to the specifically listed statutory criteria in section 179A.09 that must be considered when making a unit determination, that section also states that the Bureau must also consider "other relevant factors." Minn. Stat. § 179A.09, subd. 1 ("the commissioner shall consider . . . other relevant factors"). "Relevant" is defined as "having significant and demonstrable bearing on the matter at hand." *Merriam-Webster's Collegiate Dictionary* 1051 (11th ed. 2014). In the context of the statute, the Commissioner

12

of the Bureau is thus able to consider other factors that have significant and demonstrable bearing on whether a unit is appropriate, consistent with the stated purpose of PELRA "to promote orderly and constructive relationships between all public employers and their employees."  Minn. Stat. § 179A.01(a).

The Bureau is the governmental body that is best positioned to determine what "other relevant factors" may best help promote orderly and constructive employment bargaining relationships.   The inference that the Legislature has entrusted the Commissioner of the Bureau to use their expertise when determining these factors is logical, especially considering the extent of the Commissioner's other powers in the public employment arena.  *See* Minn. Stat. § 179A.04 (including the power to investigate petitions for election procedures and arbitration, to provide mediation services, and to create grievance procedures).

Had the Legislature wanted the Bureau to consider only certain factors, it would not have included the catch-all "other relevant factors" phrase; conversely, had it wanted the Bureau to consider other specific factors, it clearly knew how to do so.  The only reasonable interpretation of "other relevant factors" is one that implicitly allows the Bureau to determine which factors are relevant when making a thorough unit determination analysis.

"[O]ther relevant factors" traditionally considered by the Bureau include "1) Degree of functional integration; 2) Nature of the employee skills and occupational functions; 3) Interchangeability and contact among employees; 4) General working conditions; 5) Hours of work; 6) The number of employees affected; 7) Work location; 8) Nature of compensation; and 9) Common supervision."  *Indep. Sch. Dist. No. 709*, BMS Case

13

No. 87-PR-161 at 4. None of these factors are a specifically listed factor, yet the Bureau has developed them through its decades of experience making bargaining unit determinations.

The same may be said for the addition of overfragmentation to the Bureau's list of "other relevant factors." When discussing the potential pitfalls resulting from the undue proliferation of bargaining units—another phrase for overfragmentation—the Bureau has stated that "[w]hile the number of bargaining units is not a factor listed at § 179A.09, the Bureau has traditionally considered it as an 'other relevant factor.' " *Minn. Ass'n of Pro. Emps. & Ramsey Cnty.*, BMS Case No. 03-PCE-955, at 6 (July 25, 2003). This factor has been developed and applied by the Bureau for at least 40 years. *See*, *e.g.*, *Minn. Sch. Emps. Ass'n & Indep. Sch. Dist. No. 690*, BMS Case No. 81-PR-947-A, at 2 (May 27, 1981) (stating that its analysis "requires the balance between the community of interest of employees and excessive fragmentation"); *L. Enf't Lab. Servs. & Anoka Cnty.*, BMS No. 21-PCE-0336, at 4 (Feb. 24, 2021) (explaining that "over fragmentation, a consideration not identified in §179A.09 [is] however a consideration the Bureau has used for decades").

Based on our analysis, we hold that under PELRA, overfragmentation is one of the "other relevant factors" that the Bureau is allowed to consider when analyzing statutory factors for a unit determination.

14

## III.

With overfragmentation in mind, we now turn to the third question, which is whether the Bureau gave improper weight to overfragmentation and its four-unit policy preference when making its unit determination. As discussed above, the Bureau may consider overfragmentation in its unit analyses, but the question remains of how much weight may be given to that factor and its related consideration, the Bureau's four-unit policy preference.

When determining bargaining structures for county government employees, the Bureau has long followed a policy of forming units based on broad occupational groups to avoid excessive fragmentation of the bargaining structure. *See AFSCME, Council No. 65 & Cnty. of Sibley*, BMS Case No. 83-PR-48-A, at 4–5 (Sept. 10, 1982). The inclusion of a "clerical-technical-professional unit" in that structure began over 40 years ago. *Id.* at 5. Today, the four basic units of county government preferred by the Bureau when making unit determinations are "essential, highway maintenance and public works, social service department, and county-wide office-clerical-administrative, technical, and professional employees." *AFSCME, Council No. 65 & Cnty. of Morrison*, BMS Case No. 99-PCE-402, at 2 (Jan. 4, 1998). We must determine whether the Bureau's adherence to its four-unit policy preference when determining the appropriate unit in this case was supported by PELRA.[4]

---

[4] In its brief to us, the Union argued for the first time that this four-unit policy preference was an improperly promulgated administrative rule. "Generally, we do not address issues the petitioner fails to raise in a petition for further review because such a failure waives the issue on appeal." *State v. Koppi*, 798 N.W.2d 358, 366 (Minn. 2011).

15

Statutory construction is a question of law that we review de novo. *Anderson-Johanningmeier v. Mid-Minnesota Women's Ctr., Inc.*, 637 N.W.2d 270, 273 (Minn. 2002). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16 (2022).

The factors that the Bureau must consider when making an appropriate unit determination are "the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, history, extent of organization, the recommendation of the parties, and other relevant factors." Minn. Stat. § 179A.09, subd. 1. The "other relevant factors" phrase creates a general catch-all category, which, as discussed above, allows the Bureau to consider factors that it deems integral to the process of determining an appropriate unit. Section 179A.09 also provides that "[t]he commissioner shall place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives." *Id.*

What PELRA does *not* state is that the general catch-all factors may control over those factors specifically enumerated by the Legislature. If the Legislature had wanted to

---

"An issue is not properly before this court when a party presents it for the first time in its brief, and we generally do not address issues that were not raised in a party's petition for review." *Hennepin Healthcare Sys., Inc. v. AFSCME Minn. Council 5, Union*, 990 N.W.2d 454, 468 n.5 (Minn. 2023). Because the issue of an improperly promulgated administrative rule is not properly before us, we do not address it.

give the Bureau such discretion, it could have. After all, the Legislature clearly knew how to give some factors more weight than others based on the instruction that "[t]he commissioner shall place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives." Minn. Stat. § 179A.09, subd. 1. By legislative directive, the Bureau is *required* to give these three factors greater weight. Therefore, we conclude that the catch-all factors determined to be relevant by the Bureau—including overfragmentation and the four-unit preference—cannot be given greater weight than the history and extent of organization, and the desires of the petitioning employee representatives. Likewise, the catch-all factors cannot be given controlling weight over the specifically listed statutory factors.

After detailing its analysis of the statutory factors, the Bureau stated in the conclusion of its order:

> It is the Bureau's policy absent compelling reasons otherwise or stipulation by the parties to *only* certify four basic bargaining units in counties to prevent over-fragmentation of bargaining units.

*Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989 at 11 (emphasis added). It is plain from this language that the Bureau considered its four-unit preference to be effectively controlling and to carry greater weight than any other factor in the unit determination analysis, including the three factors section 179A.09 requires the Bureau to "place particular importance upon." To *only* certify four basic units, absent compelling reasons, is not only contrary to the plain language of PELRA, but it makes the specific statutory factors all but extraneous.

17

Further, when articulating its decision regarding the Union's petitioned-for bargaining unit, the Bureau stated, "[n]either party presented evidence showing the Bureau has created any bargaining units of clerical/technical employees in a Sheriff's office or other singular department without a rationale reason [sic] for such exception." *Id.* Nothing in PELRA justifies the Bureau creating an evidentiary burden of this type in favor of its four-unit preference. Not only must the Bureau make its unit determination decision based upon the statutory factors, but it also may not base that determination on whether there exists evidence to show that the Bureau has previously created a similar unit.

In short, the Bureau gave priority and effectively controlling weight to its four-unit preference and the related overfragmentation concerns over the specific factors listed in PELRA. "Agency decisions are reversed when they reflect an error of law." *Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006). Prioritizing the four-unit policy preference over those factors upon which the Bureau must place particular importance—and giving the four-unit preference controlling weight over the specifically listed factors in Minn. Stat. § 179A.09, subd. 1— was an error of law.

We therefore conclude that the Bureau did not properly analyze the Union's petitioned-for bargaining unit when it found the unit to be inappropriate because it was not one of the four preferred basic county bargaining units. Remand is appropriate here because the unit determination decision that was initially made weighted the statutory factors in PELRA improperly. A bargaining unit determination must now be made by the Bureau giving appropriate weight and consideration to those factors.

18

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the Bureau and remand for further proceedings consistent with this opinion.

CONCURRENCE

THISSEN, Justice (concurring).

Law Enforcement Labor Services, Inc. (the Union) filed a petition on behalf of all non-supervisory, non-confidential clerical and technical employees[1] of the Anoka County Sheriff's Office to determine the appropriate bargaining unit for those employees.[2] The Public Employment Labor Relations Act (PELRA) charges the Commissioner of the Bureau of Mediation Services (the Bureau) with determining "appropriate units, under the criteria of section 179A.09." Minn. Stat. § 179A.04, subd. 2 (2022); *see* Minn. Stat. § 179A.03, subd. 2 (2022) (defining "appropriate unit or unit" as "a unit of employees determined under sections 179A.09 to 179A.11").[3] In other words, while the Bureau has authority to make unit determination decisions, its power is constrained by the framework of limitations on the Bureau's authority set forth in PELRA. *In re Qwest's Wholesale Serv. Quality Standards*, 702 N.W.2d 246, 259 (Minn. 2005) (explaining that administrative

---

[1] The terms confidential employees, public employees, and supervisory employees are defined in Minn. Stat. § 179A.03, subds. 4, 14 and 17 (2022).

[2] The job classifications of the Sheriff's Office employees on whose behalf the Union filed the petition include Principal Administrative Secretary, Civil Specialist, Principal Accounting Clerk, Community Relations Coordinator, Crime Analyst, Gun Permit Coordinator, Assistant Gun Permit Coordinator, Administrative Supervisor, Property Technician, Records Technician, Data Practices Specialist, Technical Analyst, Training Coordinator, and Crime Watch Coordinator.

[3] The task of making unit determinations is qualitatively different in nature than another task delegated to the Bureau—that of assisting in the resolution of labor disputes between employers and employees through mediation and arbitration. *See, e.g.*, Minn. Stat. §§ 179.02, 179.06-09 (2022). The dissonance between those two roles may have contributed to some of the concerns I have about the Bureau's decision in this case and the evolution of its approach to unit determinations described in more detail below.

agencies are creatures of statute, retain only those powers granted to them by statute, and must act within their statutory authority); *see also In re Surveillance And Integrity Rev. (SIRS) Appeals by Trinity Home Health Care Servs. and Etyane Ayana*, 996 N.W.2d 178, 188 (Minn. 2023) (observing that "[a]n agency's authority may be stated either expressly in statute or implied from the express powers given to the [agency] by the Legislature" and "[a]ny enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature" (citations omitted) (internal quotation marks omitted)). Further, when the language of a statute is unambiguous, we apply the plain language of the statute. *In re Denial of Contested Case Hearing Requests*, 993 N.W.2d 627, 646 (Minn. 2023). It is only when the language of a statute is ambiguous that we may consider an agency's interpretation in which case "we may, but are not required to, defer to the agency's reasonable interpretation of the statute . . . ." *Id.* When the agency's reasonable interpretation of an *ambiguous* statute has been longstanding (as is this case here), it is ordinarily "entitled to weight," *Minn. Power & Light Co. v. Pers. Prop. Tax, Taxing Dist., Sch. Dist. No. 695*, 182 N.W.2d 685, 689 (Minn. 1970), and may be used to help ascertain "the intention of the legislature," Minn. Stat. § 645.16 (2022).

As a court, we owe some deference to the Bureau based on its experience and expertise. But the Bureau also must defer to the Legislature; it does not have free range to do what it wants within its area of expertise. Accordingly, we owe the Bureau *no deference* when their norms and practices run contrary to the Legislature's plain statutory directives. One fundamental disagreement I have with the court is that it leapt immediately to

deference to the agency without first determining if the statutory language is plain and the scope of the limits that plain language places on agency authority.

Applying its own policy preferences and decision-making norms, the Bureau determined that the bargaining unit proposed by the Union was not an appropriate unit. In addition, the Bureau determined that the appropriate bargaining unit is:

> All clerical and technical employees of Anoka County, who are public employees within the meaning of Minn. Stat. § 179A.03, [s]ubd. 14, excluding the appraiser, senior appraiser, professional, supervisory, confidential, essential and all other employees.

Thus, instead of organizing the clerical and technical employees in the Sheriff's Office—the employees who have expressed an interest in organizing and the group the Union desires to organize—the Bureau's decision requires that unless the Union organizes the currently unorganized clerical and technical employees in every department of Anoka County with the statutory exceptions noted, no clerical and technical employees may organize and receive the protections of PELRA.

In this appeal, we must determine whether the Bureau properly determined that the bargaining unit proposed by the Union was not an appropriate unit. The court concludes that the Bureau's determination was flawed because it placed undue reliance on concerns about overfragmentation. I agree with the conclusion but for different reasons.

For one thing, the Bureau relied on a policy of its own invention that county employees must be organized into one of four basic bargaining units unless the employees, their representative, and the employer agree that a different unit is appropriate or if the employees and their representative offer a "compelling reason" to deviate from the

four-basic-bargaining-unit structure. This four-basic-bargaining-unit-presumption policy has no basis in the language and structure of Minnesota Statutes section 179A.09, subdivision 1 (2022), for determining whether the bargaining unit proposed by the employees and their representative is an appropriate unit—indeed, the policy is contrary to the framework set forth by the Legislature in the statute. By presuming that the four-basic-bargaining-unit structure is the presumptive default structure, the Bureau flipped the statutory framework on its head. In short, the Bureau's decision in this case is contrary to law and arbitrary.

The Bureau also misapplied several of the statutory factors set forth in section 179A.09, subdivision 1. Among other things, and importantly, the Bureau placed undue weight on concerns about overfragmentation of bargaining units and failed to "place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives," as expressly required by section 179A.09, subdivision 1. In fact, the Bureau did not consider the desires of the petitioning employee representatives *at all*.

A.

I start where I must with the language of the statute. In Minn. Stat. § 179A.01 (2022), the Legislature provided us with a clear statement of the values and purposes it had when it enacted PELRA. The Legislature observed that, in addition to public employees and public employers, the public in general had an interest in "orderly and constructive relationships between all public employers and their employees." Minn. Stat. § 179A.01(a). Indeed, the Legislature told us that the "right of the citizens of this state to

C-4

keep inviolate the guarantees for their health, education, safety, and welfare" must be a "paramount right." *Id.* The Legislature further recognized that the "importance or necessity of some services to the public can create imbalances in the relative bargaining power between public employees and employers" that render the bargaining power of public employees different than those of private sector employees. Minn. Stat. § 179A.01(b); *see also* Minn. Stat. §§ 179A.18, 179A.19 (2022) (prohibiting strikes by essential employees and making strikes by other public employees illegal unless certain protocols are followed); *Minneapolis Fed'n of Tchrs. Loc. 159 v. Obermeyer*, 147 N.W.2d 358, 365–67 (Minn. 1966) (discussing the history of restrictions on public employees in organizing a labor union). Finally, the Legislature stated that the balancing of the rights and interests of "the public employee, public employer, and the public at large" is best served by "granting public employees certain rights to organize and choose freely their representatives [and] requiring public employers to meet and negotiate with public employees in an appropriate bargaining unit and providing that the result of bargaining be in written agreements." Minn. Stat. § 179A.01(c)(1), (2) and (3).

It is also important that the question for the Bureau in unit determination cases is whether the unit proposed by the representatives of the employees who seek to organize is *an* appropriate unit—not necessarily the most appropriate unit. As we stated in *Hill-Murray Federation of Teachers v. Hill-Murray High School*, 487 N.W.2d 857, 867 (Minn. 1992):

> Because it is the union which is seeking to establish rights under the statute—and since the standard is "an" appropriate unit, rather than the "most" appropriate unit—when confronted with employer-union contentions

over the boundaries of the appropriate unit, it is customary for administrative agencies [like the Bureau] to examine the proposals of the union first. It is only when the union's proposals are rejected as "inappropriate" that it becomes necessary to examine those presented by the employer.

In that case, we also cited with approval *In re Morand Bros. Beverage Co. v. NLRB*, 91 N.L.R.B. 409, 418 (1950), for the proposition that it is not necessary that the "unit for bargaining be the *only* appropriate unit, or the *ultimate* unit, or the *most* appropriate unit"—the unit only needs to be appropriate. *Hill-Murray*, 487 N.W.2d at 867; *see also In re AFSCME Council No. 65 & Indep. Sch. Dist. No. 480*, PERB Case No. 77-PR-802-A, at 4 (Nov. 10, 1977) (stating that the role of the Bureau "is to determine if the unit petitioned for is 'an' appropriate bargaining unit. No provision of [PELRA] mandates that collective bargaining in a proposed unit which is otherwise appropriate is to be denied simply because another unit may be conceptually 'most' appropriate") [opinion attachment[4]]. The court properly recognizes this and holds that the Bureau cannot consider bargaining unit structures other than that proposed by the organizing employees and their representative until the Bureau first determines that the bargaining unit proposed by the organizing employees and their representatives is not an appropriate unit.

But this is not simply a matter of procedural process; this principle is another indication that PELRA expresses a preference for the wishes of the employees seeking to organize and their representatives. The bargaining unit proposed by the organizing

---

[4]     Several of the decisions of the Bureau and the Public Relations Planning Board that the Bureau and the parties cited, and upon which the majority opinion and this concurrence rely, are not readily available or accessible to the public. In the interest of transparency, those decisions are attached to this opinion.

employees and their representatives is the starting place for the entire analysis and that unit *should* be approved unless there is a reason to believe that the unit is inappropriate. The fact that another unit may be *more* appropriate from the perspective of the employer *or* the Bureau is irrelevant. The Bureau's approach (as exemplified in this case)—which starts with the Bureau's preferred four-basic-bargaining-unit structure and insists that the employees and their representatives prove that the proposed unit is a *more* appropriate bargaining unit compared to the Bureau's preferred county bargaining unit structure—ignores this fundamental design principle embedded in PELRA.

This legislative inclination for the bargaining unit preferences of the organizing employees and their representative is also expressly found in Minn. Stat. § 179A.09, the language defining the scope of the Bureau's authority to make unit determinations. Section 179A.09, subdivision 1, provides:

> In determining the appropriate unit, the commissioner shall consider the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, history, extent of organization, the recommendation of the parties, and other relevant factors. *The commissioner shall place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives.*

(Emphasis added.) A few observations about this statutory language are in order.

The list of considerations the Commissioner may consider in determining the appropriate bargaining unit is non-exclusive. In addition to the listed factors, the Commissioner may consider "other relevant factors" including the concept of overfragmentation upon which the Bureau relies so heavily in making unit determinations

C-7

as it did in this case.[5]  I agree with the court's conclusion on this point.  I also believe, however, that although the conclusion is implicit in its decision, the court fails to sufficiently distinguish consideration of overfragmentation as one additional factor among many (which is permissible) and the separate issue of whether the way the Bureau's policy concern with overfragmentation has hardened into a presumptive four-basic-bargaining-unit rule is proper (it is not).  The problem with the Bureau's decision in this case is not simply that it considered its four-unit preference "to carry greater weight than any other factor in the unit determination analysis," but rather that it applies a four-basic-bargaining-unit rule at all.  That in itself is an arbitrary rule.  I will address this issue in more detail below.

Another aspect of section 179A.09, subdivision 1—one that is dispositive in this case—is the final phrase of the provision.  The statutory text requires that the Bureau place

---

[5]  As the court notes, the Bureau has identified a number of "other relevant factors" including "1) Degree of functional integration; 2) Nature of the employee skills and occupational functions; 3) Interchangeability and contact among employees; 4) General working conditions; 5) Hours of work; 6) The number of employees affected; 7) Work location; 8) Nature of compensation; and 9) Common supervision." *Indep. Sch. Dist. No. 709 & Non-Certified Supervisory Ass'n & Educ. Dirs. Ass'n*, BMS Case No. 87-PR-161, at 4 (July 22, 1987).  It strikes me after reviewing past Bureau decisions that most of these factors are the same as, or included within, the factors specifically identified in section 179A.09, subdivision 1.  It is not clear why the Bureau treats them as independent "other relevant factors"—perhaps it creates an appearance of extra heft to counterbalance the factors the Legislature said were to be given particular importance.  In contrast, the Bureau's decision in *Anoka Cnty. & AFSCME, Council No. 14*, BMS Case No. 02-PCE-894, at 5–6 (Mar. 27, 2002), provides a clear example of a unique "other relevant factor." As discussed more fully in footnote 7 below, in that case, the Bureau found that administrative staff in the Anoka County courts was an appropriate unit because, by legislation, the court administration staff would soon after organizing become statewide court employees rather than county employees. *Id.*

greater weight on the history and extent of organization and the desires of the petitioning

employees than it places on (1) other factors that the commission "shall consider," (2) any

"other relevant factors," (3) the manner in which the public employer has structured its

operations, or (4) the Bureau's broad policy concerns about overfragmentation.[6]  Minn.

---

[6]     The preference to be placed on the bargaining unit proposed by the organizing employees and their representative is also shown in the evolution of section 179A.09, subdivision 1, and its predecessor statutes.  The language now found in section 179A.09, subdivision 1, was first added to statute in 1965.  Act of May 26, 1965, ch. 839, § 2, 1965 Minn. Laws 1554, 1555–56 (codified as amended at Minn. Stat. § 179.52, subd. 4 (1966)). The amended language provided:

> In defining the [representation] unit, the labor conciliator shall take into consideration, along with other relevant factors, the principles of efficient administration of government, the principles and the coverage of uniform comprehensive position classification and compensation plans in the governmental agency, the history and extent of organization, occupational classification, administrative and supervisory levels of authority, geographical location, and the recommendations of the parties.

*Id.*  In 1971, the Legislature enacted the modern version of PELRA.  Act of Nov. 3, 1971, ch. 33, 1971 Minn. Laws Extra Sess. 2709.  Section 11 of the legislation provided:

> The director shall determine appropriate units.  In determining the appropriate unit he shall take into consideration, along with other relevant factors, the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, the history and extent of organization, involvement of professions and skilled crafts and other occupational classifications, relevant administrative and supervisory levels of authority, the desires of the employees and employers, geographical location, and the recommendation of the parties.

*Id.*, ch. 33, § 11, 1971 Minn. Laws Extra Sess. at 2725 (codified at Minn. Stat. § 179.71, subd. 3 (1972)).  In this amendment, the Legislature affirmatively eliminated the express reference to "the efficient administration of government," added the language "the desires of the employees and employers" and changed the plural "recommendations of the parties" to the singular "recommendation of the parties."

  In 1973, the Legislature amended this provision once again to a form substantially similar to that now found in section 179A.09, subdivision 1.  Act of May 24, 1973, ch. 635, § 26, 1973 Minn. Laws 1526, 1536.  The amended provision provided:

> In determining the appropriate unit [the director] shall take into consideration, along with other relevant factors, the principles and the coverage of uniform comprehensive position classification and

Stat. § 179A.09, subd. 1. And significantly, these factors upon which the Bureau must place particular importance emphasize once again the critical value that the Legislature placed on allowing the employees to organize themselves as they wish to be organized.

The importance the Legislature placed on allowing the employees to organize as they wish to be organized is also clear from the phrase "extent of organization" as that term was and is understood in labor law. *See generally* Minn. Stat. § 645.08(1) (2022) ("technical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning or their definition"). Extent of organization is a term of art that refers to "[t]he scope of the union's organizing campaign, that is, the groups of employees on which the union has focused it organizing efforts." 1 *The Developing Labor Law* 11-10 (John E. Higgins, Jr., ed., 7th ed. 2017). Or, as articulated by the Bureau, the phrase "measures which grouping of employees has expressed support for the union." *Cnty. of Anoka & AFSCME, Council No. 14*, BMS Case No. 02-PCE-894, at 3 (May 8, 2002) (May 2002 AFSCME-Anoka County Decision).[7]

---

compensation plans of the employees, ~~the history and extent of organization,~~ involvement of professions and skilled crafts and other occupational classifications, relevant administrative and supervisory levels of authority, ~~the desires of the employees and employers,~~ geographical location, and the recommendation of the parties<u>, and shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives.</u>

*Id.* In addition to adding the requirement that the Bureau place "particular importance upon the history and extent of organization and the desires of the petitioning employee representatives," the Legislature affirmatively eliminated any reference to the desires of the employers as a factor that "shall" be considered.

[7] In its decision in this case, the Bureau cited *Anoka Cnty. & AFSCME, Council No. 14*, BMS Case No. 02-PCE-894 (Mar. 27, 2002) (March 2002 AFSCME-Anoka County

The concept of extent of organization arose in response to early National Labor Relations Board (NLRB) decisions that placed significant weight on the extent of organizing efforts existing at the time of the petition to determine an appropriate unit was filed. The rationale for placing weight on the extent of organization was a recognition that "it is often desirable to render collective bargaining a reasonably early possibility for the employees involved" in the organizing effort. *The Developing Labor Law*, *supra*, at 11-10. This preference served the interest of labor peace by allowing those employees interested in organizing to be recognized before they resorted to striking or other tactics to force the employer to recognize the union and also limiting the ability of other unorganized

---

Decision), as the source of the definition. In fact, the definition is included in the May 2002 AFSCME-Anoka County Decision, the Bureau's ruling affirming the March 2002 AFSCME-Anoka County Decision upon reconsideration.

Nonetheless, the Bureau's initial decision in the March 2002 AFSCME-Anoka County Decision is informative here. The decision arose out of AFSCME Council 14's efforts to organize a bargaining unit much like the bargaining unit proposed by the Union in this case—a bargaining unit consisting of all non-supervisory, non-confidential office clerical/administrative and technical public employees within Anoka County court administration. March 2002 AFSCME-Anoka County Decision at 1. As in the current case, Anoka County opposed the unit determination, asserting that the appropriate unit is *all* non-supervisory, non-confidential office clerical/administrative and technical public employees of Anoka County. *Id.* The Bureau *rejected* the County's position, primarily on the ground that court administration staff would soon become statewide court employees. *Id.* at 5–8. But in its analysis, the Bureau determined that the "extent of organization" factor *favored* the smaller, more focused unit proposed by AFSCME because the "[e]vidence indicates that the extent of Council [14]'s organizational activity has been limited to the court employees. This factor supports Council 14's proposed bargaining unit," *id.* at 5—the opposite of the Bureau's decision in this case.

employees or others to block collective bargaining by requiring the union to organize additional workers.[8] As described in the NLRB's 1947 Annual Report:

> Another factor influencing the Board's determination of the appropriate unit was the *extent of employee self-organization*. This circumstance had been effective in the past in establishing the appropriateness of a grouping of employees which was less than the optimum one but was nevertheless feasible for bargaining purposes. The theory expressed in these cases was that it is often desirable in the determination of an appropriate unit to render collective bargaining for the employees involved a reasonably early possibility, lest prolonged delay *expose the organized employees to the temptation of striking to obtain recognition* and *permit unorganized employees engaged in other work tasks to thwart collective bargaining by those who have evinced an interest in selecting a representative*.

12 NLRB Ann. Rep. 20 (1947) (emphasis added).

In other words, by stating that the Bureau must place "particular importance" on extent of organization, the Legislature directed that, in determining whether the proposed unit is an appropriate unit, the Bureau must give the unit preferences of those employees who have expressed an interest in organizing more weight than the other statutory factors—even if the employees' preferred unit is not optimal.[9]

---

[8]    In this regard, recall the expressed purpose of the Legislature in enacting PELRA: to create "orderly and constructive relationships between all public employers and their employees" and to grant "public employees certain rights to organize and choose freely their representatives." Minn. Stat. § 179A.01(a), (c)(1).

[9]    The "particular importance" that the Legislature instructed the Bureau to place on the preferred unit of those employees who have expressed an interest in organizing stands in contrast to federal law. In the 1947 Labor-Management Relations (Taft-Hartley) Act, Congress amended 29 U.S.C. § 159(c)(5)—known as Section 9(c)(5)—and told the NLRB that "[i]n determining whether a unit is appropriate . . . the extent to which the employees have organized shall not be controlling." Taft-Hartley Act, ch. 120, sec. 101, § 9(c)(5), 61 Stat. 136, 144 (1947). In other words, when it amended PELRA in 1973, the Minnesota Legislature expressly made the choice to take a different course and place *greater importance* on the extent to which the employees have organized than Congress did in the

The Legislative intent to place "particular importance" on allowing the employees to organize themselves as they wish to be organized is also shown in the phrase "the desires of the petitioning employee representatives" in section 179A.09, subdivision 1—a factor that the Bureau failed to address in its decision in this case. In prior decisions, the Bureau has stated that this factor looks to the "desires of the . . . union organizations themselves." May 2002 AFSCME-Anoka County Decision at 3. And we applied this preference in just this manner in *Minnesota State College Board v. Public Employment Relations Board*, a case in which we faced the question of whether the appropriate bargaining unit for the faculty at Minnesota's then seven state colleges and universities was a single statewide unit or a unit for each individual college. 228 N.W.2d 551, 553 (Minn. 1975). We held that a statewide unit was appropriate. *Id.* at 562. Among the reasons for our decision was that section 179.71 (the 1974 provision parallel to section 179A.09, subdivision 1) provided that the Bureau "shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives" and three out of the four employee representatives agreed that the appropriate unit was the statewide unit. *Id.* at 561.

Finally, under section 179A.09, subdivision 1, the Bureau is required to place "particular importance" on the history of organization of employees of the public employer.

---

Taft-Hartley Act. *See generally* Eli Rock, *The Appropriate Unit Question in the Public Service: The Problem of Proliferation*, 67 Mich. L. Rev. 1001, 1004 (1969) (noting that the Minnesota Legislature's decision to permit a government agency to rely on the "extent of employee organization" expressly moved in the direction of "further proliferation" of bargaining units).

*See* May 2002 AFSCME-Anoka County Decision at 2 (history means "bargaining history"). This factor will be discussed in more detail below.

One further comment about the structure and language of PELRA is necessary. In contrast to the multi-factor framework set forth in section 179A.09, subdivision 1, for making unit determination decisions for county or other local governments' employee bargaining units, the Legislature adopted a different approach for statewide employees. The Legislature expressly defines in statute the appropriate units for executive branch employees of the State of Minnesota, Minn. Stat. § 179A.10, subd. 2 (2022) (establishing in statute 19 distinct bargaining units for employees of the state executive branch). The Legislature similarly defined the appropriate units for judicial branch employees, Minn. Stat. § 179A.101 (2022), employees of the State Board of Public Defense, Minn. Stat. § 179A.104 (2022), and the University of Minnesota, Minn. Stat. § 179A.11 (2022). In addition, "[f]or school districts, unit means all the teachers in the district." Minn. Stat. § 179A.03, subd. 2. Stated more simply, the Legislature mandated specific categorical bargaining units for certain groups of public employees, but it did not do so for county and other local employees. For county and local employees, the Legislature directed that the Bureau use a multi-factor balancing test in which particular emphasis is placed on employee autonomy, self-determination, and preferences.

In summary, under the Public Employment Labor Relations Act, the preferences of the employees seeking to organize and their representatives must be afforded particular importance by the Bureau when deciding whether the unit those employees and representatives have proposed is *an* appropriate unit. That is shown by the expressly stated

purposes of PELRA, which favor the right of employees both to organize for purposes of negotiating with public employers (it is the fact of organization and negotiation that allows for labor peace) and to choose the representative they prefer, as well as the specific language of section 179A.09, which limits the scope of the Bureau's authority to determine whether a proposed unit is an appropriate unit.

B.

The Bureau's approach to determining whether the unit proposed by the Union and the Sheriff's Office employees it was representing was the appropriate unit was quite different from the framework set forth in PELRA and, specifically, section 179A.09, subdivision 1. The Bureau's approach is best summarized in its own words in the decision:

> It is the Bureau's policy absent compelling reasons otherwise or stipulation by the parties to only certify four basic bargaining units in counties to prevent over-fragmentation of bargaining units.

*Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989, at 11 (June 2, 2022). Although the Bureau now seeks to disavow the statement as loose language, I see no reason not to take the hearing officer at her word. The decision in this case as a whole is permeated with an overriding concern about overfragmentation and a preference for "four basic bargaining units."[10]  In fact, the hearing officer was being admirably honest about the Bureau's policy and practice. The hearing officer explained in great detail that

---

[10]  The four basic bargaining units for counties identified by the Bureau in its decision are units of essential employees, highway maintenance and public works employees, social service department employees, and county-wide office-clerical-administrative, technical, and professional employees. *Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989 at 5 (citing *AFSCME Council No. 65 & Cnty. of Morrison*, BMS Case No. 99-PCE-402, at 2 (Jan. 4, 1998) [opinion attachment]).

the Bureau has applied a presumption against any proposed bargaining unit that does not fall within one of the four basic bargaining units for several decades. *Id.* at 5–6 (citing *AFSCME Council No. 65 & Cnty. of Morrison*, BMS Case No. 99-PCE-402, at 2 (Jan. 4, 1998) [opinion attachment]; *AFSCME Council No. 65 & Cnty. of Redwood*, BMS Case No. 90-PCE-2003, at 3 (Sept. 12, 1989) [opinion attachment]; *AFSCME Council No. 65 and Cnty. of Sibley*, BMS Case No. 83-PR-48-A, at 4–5 (Sept. 10, 1982) [opinion attachment]).

I agree with the court that the Bureau's stated and applied policy—that absent compelling reasons otherwise or stipulation by the parties, it will refuse to certify a county employee bargaining unit that deviates from the four-basic-bargaining-unit structure—is inconsistent and in conflict with section 179A.09, subdivision 1. Indeed, the presumption in favor of the four-basic-bargaining-unit structure turns on its head the analysis mandated by the Legislature that gives a preference to the wishes of the organizing employees and their chosen representative.

I conclude, however, that the problem with the decision in this case is *not only* that the Bureau gave *undue weight* to overfragmentation concerns and the Bureau's own policy preference for four basic bargaining units. I would go further: the four-basic-bargaining-unit structure should not be considered *at all*. Notably, while not expressly stated, the court does not express disagreement with this broader conclusion. The Bureau's policy of requiring every group of county employees who wish to organize a union to organize all the employees in a unit that conforms to one of the Bureau's preordained boxes unless they can get the county employer to agree to their unit or show some other compelling circumstance is wholly arbitrary. In sum, under the Bureau's approach, the legislative

emphasis on employee self-determination turns into a "state-agency-knows-best" process which often may be (as in this case) a roadblock to employee self-determination and, indeed, shifts power away from the employees the statute is designed to empower and instead defers to the wishes of the employer by requiring, in all but the most compelling cases, that the employer sign-off before departing from the four-basic-bargaining-unit presumption.

1.

Nothing in section 179A.09, subdivision 1, suggests that county and other local government bargaining units must presumptively fall within very specific defined occupational groups—essential employees, highway maintenance and public works employees, social service department employees, and county-wide office-clerical-administrative, technical, and professional employees. The statute makes no mention of four basic bargaining units. The Bureau's approach is contrary to the multi-factor balancing approach set forth in the statute. Further, the Legislature did adopt in statute the approach of establishing preordained occupational bargaining groups for employees of the state executive branch, the court system, the State Board of Public Defense, the University of Minnesota, and for teachers in school districts. Minn. Stat. §§ 179A.10, subd. 2, 179A.101, 179A.104, 179A.11, and 179A.03, subd. 2. If the Legislature had intended that the Bureau determine whether a bargaining unit of county or other local government employees is appropriate based on a preordained occupational or departmental structure—if it had intended that the Bureau adopt something like the four-basic-bargaining-unit structure it uses as a matter of Bureau policy—it would have

done so because it plainly knows how to do so. *Firefighters Union Loc. 4725 v. City of Brainerd*, 934 N.W.2d 101, 110 (Minn. 2019) (refusing to read a motive element into one part of a statute where the Legislature expressly included a motive element in another related part of the statute). And, most fundamentally, the Bureau's *presumption* that its four-basic-bargaining-unit will apply absent compelling reasons otherwise is directly contrary to the Legislature's directive that the Bureau "place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives." Minn. Stat. § 179A.09, subd. 1.

2.

The conclusion that the Bureau's policy is inconsistent with the statute and that the presumptive four-basic-bargaining-unit structure is arbitrary also becomes evident when one considers the evolution of the Bureau's approach to unit determination decisions. A review of these cases demonstrates that the Bureau adopted its policy by ignoring the statutory language in section 179A.09, subdivision 1, and imposing instead its conception of what an appropriate unit is. In particular, the history of the Bureau's determination decisions shows that it started off by affording great deference to the bargaining unit proposed by the organizing employees and their representative. In the 1980s, however, the Bureau's rationale and approach changed with decisions focused on an overriding concern about fragmentation and *no mention* of the particular importance to be placed on the history and extent of organization and the desires of the petitioning employee representative. By the late 1980s, this focus on fragmentation had hardened into the Bureau's rigid four-basic-bargaining-unit rule.

Early unit determination decisions of the Bureau and the Public Employment Relations Board focused on the statutory language in what is now section 179A.09, subdivision 1, and appropriately placed heavy weight on the desires of the organizing employees and their representative. For instance, in 1977, AFSCME Council 65 sought to organize all non-teaching employees of Independent School District 480 excluding employees who work less than 14 hours per week or 100 days per year. *In re AFSCME Council No. 65 & Indep. Sch. Dist. No. 480*, PERB Case No. 77-PR-802-A, at 2 (Nov. 10, 1977) [opinion attachment]. At the urging of the school district, the Bureau determined that the employees should be separated into six distinct bargaining units. *Id.* at 1–2. The Bureau further determined that employees in four of the six units demonstrated sufficient interest in organizing and ordered a representation election for those units, but employees in two of the six units did not demonstrate sufficient interest in organizing and did not order an election. *Id.* at 2.

The Public Employment Relations Board reversed the Bureau's decision and ordered that one general unit of employees, rather than four separate units of employees, was the appropriate unit. *Id.* at 3. The Public Employment Relations Board reasoned that section 179.71, subdivision 3 (1976)—the earlier version of section 179A.09, subdivision 1—governed. *Id.* The Public Employment Relations Board explained that AFSCME 65 desired a single unit of employees and "[s]ection 179.71, subd. 3, makes it clear that the desires of the petitioning employee representative shall be given particular importance." *Id.* at 4. The Public Employment Relations Board also observed:

> [T]he role of the . . . Director is to determine if the unit petitioned for is "an" appropriate bargaining unit. No provision of the Public Employment Labor Relations Act mandates that collective bargaining in a proposed unit which is otherwise appropriate is to be denied simply because another unit may be conceptually "most" appropriate.

*Id.* In other words, the Public Employment Relations Board determined that one broader unit of employees (although not all employees) was appropriate—even if some other unit would be more appropriate—*because that was the petitioning employee representative's desire.* The Bureau amended its order accordingly. *AFSCME Council No. 65 & Indep. Sch. Dist. No. 480*, BMS Case No. 77-PR-802-A (Dec. 5, 1977) [opinion attachment].

In 1981, the Minnesota School Employees Association sought to organize a unit of employees of Independent School District 690, consisting of cooks, custodians, secretarial/clerical, and teacher aids. *Minn. Sch. Emps. Ass'n & Indep. Sch. Dist. 690*, BMS Case No. 81-PR-947-A, at 1 (May 27, 1981) [opinion attachment]. The school district argued that there should be separate bargaining groups for each occupation as well as for bus drivers. *Id.* at 2.

The Bureau agreed with the Minnesota School Employees Association (it excluded five employees because they were supervisory employees or confidential employees) and certified a unit of all non-teacher employees of the school district. *Id.* at 3. The Bureau explained:

> In determining appropriate units, the Bureau is directed by the statutory criteria established by Minn. St. 179.71, subd. 3. The application of these criteria to the employment relationship existing in school districts requires the balance between the community of interest of employees and excessive fragmentation of bargaining structure. At some point the Bureau's general policy of separate units for office, food service, maintenance, and

transportation employees conflicts with unit fragmentation because of the number of employees involved.

> *Minn. St. 179.71, subd. 3, emphasizes that in determining appropriate units the [Bureau] "shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives."*

*Id.* at 2 (emphasis added) (citing *AFSCME Council No. 65 & Indep. Sch. Dist. No. 480*, PERB Case No. 77-PR-802-A at 2). Once again, the Bureau settled on a broader unit covering more employees (even though its then-preference was separate units for different occupational groups) because that was the petitioning employee representative's desire.

In 1982, the Bureau made the first turn toward its current policy, absent compelling reasons otherwise or stipulation by the parties, to only certify four basic bargaining units in counties to prevent overfragmentation of bargaining units. That year, AFSCME Council 65 sought to organize a bargaining unit of all full-time clerical, technical, and professional employees of Sibley County, except that the union did not want to include employees in the county's Public Health Nursing Department. *AFSCME Council No. 65 & Cnty. of Sibley*, BMS Case No. 83-PR-48-A at 5. Sibley County argued that the employees in the Public Health Nursing Department should be included. *Id.* The Bureau determined that the Public Health Nursing Department employees should be included in the unit. *Id.*

The Bureau quoted Minnesota Statutes section 179.71, subdivision 3 (1982), but unlike its prior decisions, the Bureau made no mention whatsoever in its analysis of the statutory requirement that it must "place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives." Minn. Stat.

§ 179.71, subd. 3 (1982).  Rather, the Bureau for the first time and without citation to authority asserted that it had a "policy of determining separate bargaining units for certain employee categories."  *AFSCME Council No. 65 & Cnty. of Sibley*, BMS Case No. 83-PR-48-A at 4–5.  Citing the *Minnesota School Employees Ass'n* decision discussed above (but without reference to its reliance on the preferences of the organizing employees and their representative) the Bureau went on:

> Law enforcement (or essential employees), public works, and employees subject to the Minnesota Merit System are traditionally assigned to different units.
>
> The establishment of a clerical-technical-professional unit or "courthouse" unit versus departmental units is at the center of the dispute in this case. AFSCME Council No. 65 argues for the exclusion of the Public Health Nursing Department from a base clerical-technical-professional unit of other county employees.  The Bureau finds that there is a definite community of interest between the Public Health Nursing Department and other county employees.  This community of interest is reflected by common systems of compensation and job classification, occupational titles, supervisory structure, and a single personnel policy.  Acceptance of the AFSCME Council No. 65 argument could result in a bargaining structure of individual departments.  Such a structure, in the Bureau's opinion, would lead to fragmented bargaining disadvantageous to the employees, the union, and the employer.  As we found in *Minnesota School Employees Association v. Independent School Dist. No. 690* . . . there is a distinct balance between the narrow community of interest of some employees and the excessive fragmentation of the bargaining structure.

*Id.* at 5.  Here we see the emergence of the Bureau's four-basic-bargaining-unit structure policy and its overriding concern about fragmentation.  The Bureau justified its new policy of "determining separate bargaining units for certain employee categories" as opposed to department-based bargaining units by focusing on some of the factors included in the statute—common systems of compensation and job classification, occupational titles,

C-22

supervisory structure, and a single personnel policy[11]—as part of its "community of interest" analysis. But as noted above, in justifying this policy, the Bureau entirely ignored consideration of other factors—those factors upon which the Legislature directed the Bureau to place "particular importance."

More critically, the Bureau also imposed its own policy preference against "excessive fragmentation" based on "*the Bureau's opinion*" about what is best for the employees, the union, and the employer. By insisting that it knows best what's good for the employees and the union, the Bureau fundamentally shifted its role in unit determination proceedings. To put a finer point on it: rather than doing as the Legislature directed and giving particular deference to the choices made by the organizing employees and their representatives, the Bureau agglomerated to itself the power to decide what's best while entirely ignoring the "extent of organization" and "the desires of the petitioning employee representatives." Minn. Stat. § 179A.09, subd. 1.

By 1989, the Bureau's approach to unit determination decisions hardened into its current policy approach. In *AFSCME Council No. 65 & County of Redwood & Law Enforcement Labor Services, Inc.*, BMS Case No. 90-PCE-2003 at 6, the Bureau determined that all office, clerical, technical, and professional employees of Redwood County, except for maintenance employees in the Highway Department, Social Services

---

[11]   The statutory language described these factors as "the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, involvement of professions and skilled crafts and other occupational classifications [and] relevant administrative and supervisory levels of authority." Minn. Stat. § 179.71, subd. 3 (1982).

Department employees, supervisory, confidential, and essential employees constituted a proper bargaining unit. The Bureau rejected AFSCME Council 65's attempt to exclude Public Health Nursing Service employees from the unit. *Id.* at 3–4.

What is more important for our purposes is how the Bureau described its approach to unit determination:

> In establishing the bargaining structure for county government the Bureau has followed a general policy favoring four separate appropriate units. *Absent compelling reasons, units of broad occupational groups composed of essential, highway maintenance, social service department, and office-clerical-technical-professional employees are determined appropriate.*
>
> . . . Such a bargaining structure weighs the unit determination criteria of [PELRA], the organizational structure of county government, and the community of interest of the employees involved. The record in this case supports a . . . finding that a unit of office-clerical-technical-professional employees is appropriate.

*Id.* at 3 (emphasis added) (footnote omitted). By the late-1980s, then, the Bureau's rule that, absent compelling circumstances, the only appropriate bargaining unit for county employees is one of the four "broad occupational groups" was fully formed. The Bureau also plainly stated that this rule is based not only on the legislative directive in section 179A.09, subdivision 1, but also on "the organizational structure of county government"—an amorphous concept nowhere mentioned in statute—and the community of interest of the employees involved.[12] Moreover, as we saw in the discussion of *AFSCME Council No. 65 & County of Sibley*, BMS Case No. 83-PR-48-A, the Bureau made

---

[12] In *AFSCME Council No. 65 and County of Morrison*, BMS Case No. 99-PCE-402 at 3, the Bureau made clear that the " 'community of interest' of all County employees" is a concept distinct from the factors set forth in section 179A.09, subdivision 1.

absolutely no reference to the statutory directive that it "*shall* place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives." Minn. Stat. § 179A.09, subd. 1 (emphasis added). Rather, in contravention of the statutory directive that the Bureau "shall consider" all the factors explicitly listed in section 179A.09, subdivision 1, the Bureau considered in passing only a subset of the statutory factors: a common system of compensation, a common organizational and supervisory structure, and a common personnel policy. *AFSCME Council No. 65 & Cnty. of Redwood & L. Enf't Lab. Servs., Inc.*, BMS Case No. 90-PCE-2003 at 4.

In summary, the Bureau has adopted and applies a policy to only certify four basic bargaining units in counties to prevent overfragmentation of bargaining units, absent compelling reasons otherwise or stipulation by the parties. That policy, however, is wholly unmoored from the statutory language of PELRA and, in particular, section 179A.09, subdivision 1, and, as such, exceeds the Bureau's authority. In developing the policy, to the extent the Bureau considered the statute, it focused solely on a subset of the factors identified in the statute and ignored other statutory factors that the Legislature told the Bureau it "shall" consider: geographical location, the recommendation of the parties, and—above all—the "particularly importan[t]" factors of history and extent of organization and the desires of the petitioning employee representatives. Minn. Stat. § 179A.09, subd. 1. It relied on earlier decisions where it approved broader units over narrow units *which were expressly based on the employees' unit preferences* and turned that into a principle that applies *even in direct contravention of (and without even*

*mentioning) the employees' preferences.* More critically, this history makes clear that the Bureau imposed its own policy opinions and preferences about what is the best bargaining unit for the employees, the union, and the employer instead of abiding by the limits on the scope of its authority in unit determination decisions imposed by the Legislature, which directed it to give preference to the bargaining unit proposed by the organizing employees and their representatives.

3.

The hearing officer in this case—and the County in its argument to us—also relied on our decision in *Minnesota State College Board v. Public Employment Relations Board*, 228 N.W.2d 551 (Minn. 1975), to support the Bureau's four-basic-bargaining-unit policy and its strong preference against overfragmentation. The case does not support the policy.

In *Minnesota State College Board*, we faced the question whether the appropriate bargaining unit for Minnesota's then seven state colleges and universities was a single state unit or each individual college. 228 N.W.2d at 553. We considered the question under the statutory framework in place at the time. *Id.*

At the time, PELRA authorized the Bureau to determine an appropriate unit for public employees generally using criteria substantially similar to the criteria set forth in current section 179A.09, subdivision 1. *See* Minn. Stat. § 179.71, subd. 3 (1974). In a separate section, the statute also included specific provisions related to *state employees* (as opposed to employees of county and other local governments); a category which included employees of the state colleges and universities. In particular, Minn. Stat. § 179.74 provided that "the director of mediation services shall define appropriate units of state

C-26

employees as all the employees under the same appointing authority [as defined in section 43.01, subdivision 11] except where professional, geographical or other considerations affecting employment relations clearly require appropriate units of some other composition." Minn. Stat. § 179.74, subd. 4 (1974). In other words, PELRA constrained the Bureau's authority to determine appropriate units for *state employees* by creating a strong presumption that the appropriate unit should include all employees under the same appointing authority. No such language existed then or now for county and other local governments.

We determined that the appointing authority for employees of the state college and university system was the State College Board and not the presidents of the individual colleges and universities. *Minn. State Coll. Bd.*, 228 N.W.2d at 560. Consequently, under section 179.74, subdivision 4, the critical question was whether professional, geographical, or other considerations affecting employment relations *clearly required* that the appropriate units were each individual college or university. *Id.*

We concluded that other considerations did not clearly require that the individual colleges and universities were the appropriate units. Among other things, we made several specific observations about the state college and university system:

> (1) The legislature has moved to coordinate the entire state-wide college system under the auspices of the State College Board and has therefore indicated an intent that uniformity be established.
> (2) The SCB has implemented this intention and has promulgated rules which govern each institution on a state-wide, rather than individual, basis.
> (3) The system-wide unit, in all aspects, has proved to be a more efficient and economical method of administering the state college system.

(4) Competition between college units, both in the physical plants and in employer-employee benefits is reduced upon utilization of the state-wide system, because it reduces the possibility of varying benefits.

(5) Past utilization of the state-wide approach indicates that it has not stifled individualized interests at each of the colleges; that distances and locations have not prevented effective coordination between the faculty and the [State College Board]; that a substantial majority of the state college system faculty favors a state-wide unit; and that a state-wide unit has been established for the 18 junior colleges incorporating a master contract with flexible provisions for each campus.

*Id.* at 562.

Quite pertinent to this case, citing the language in PELRA that the Bureau "shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives," we found it significant that three out of the four employee representatives agreed that the appropriate unit was the statewide unit. *Id.* at 561. We quoted with approval the opinion of the members of the Public Employment Relations Board who stated that "[s]ince [the employer and employee representatives] are the parties who may in the future have to agree upon a compact on which their relationship will be governed . . . great weight must be given to their wishes." *Id.*

In summary, in *Minnesota State College Board*, we determined that the appropriate bargaining unit for faculty member employees of the state colleges and universities was a statewide unit. In reaching that conclusion, we reasoned that (1) for *statewide employees*, PELRA expressed a strong preference for a unit that included all employees under the same appointing authority—in the case of state college and university faculty, the State College Board, (2) in establishing the state college and university system, the Legislature demonstrated a preference for uniformity, and (3) in accordance with the 1974 version of

C-28

current section 179A.09, subdivision 1, great weight should be given to the preference of the representatives of the employees seeking to organize that the unit be the statewide unit.

And it is in that context that our statement that PELRA "*and its statutory coordinates* attempt to eliminate the 'overfragmentation' which might result from the certification of individual bargaining units" must be read. *Minn. State Coll. Bd.*, 228 N.W.2d at 561 (emphasis added). This is not a statement about PELRA generally. For statewide employees, the Legislature itself expressed in the text of the statute a preference against overfragmentation by defining the units in statute: unless clearly required by other considerations, the appropriate bargaining units included all employees under a single appointing authority—in the case of state college and university faculty, the State College Board. *See* Minn. Stat. § 179.74 (1974). We reviewed the record and determined that there was "little direct testimony in favor of individual campus units." *Minn. State Coll. Bd.*, 228 N.W.2d at 561–62. We further concluded that there was not enough evidence to clearly overcome the strong presumption that the appropriate unit for faculty at state colleges and universities should include all faculty members in the system because they were all appointed by the State College Board.

None of those considerations apply in unit determination decisions involving county and other local government employees. The Legislature did not statutorily define the appropriate unit for local government employees as it did for state employees. Rather, for local government employees, the limitations on the Bureau in making unit determination decisions are set forth exclusively in section 179A.09, subdivision 1, which identifies a number of factors the Bureau "shall consider," including three factors the Bureau must

"place particular importance upon."  Further, while it is true that the list of factors is non-exclusive and allows the Bureau to consider "other relevant factors" like concerns about overfragmentation, those concerns must be subordinated to the preferences of the employees being organized and their representative.  Minn. Stat. § 179A.09, subd. 1. Indeed, that is precisely what we did in our decision in *Minnesota State College Board*, 228 N.W.2d at 561.  That is not to say that the preferences of the employees being organized and their representative always prevail, but it certainly means that the Bureau cannot impose the opposite presumption that the preferences of the employees being organized and their representative should be ignored if they request a unit other than one of the four basic bargaining units because of *the Bureau's* strong policy preference against overfragmentation.  Our decision in *Minnesota State College Board* does not support the Bureau's position in this case.

### C.

With all this background in mind, I turn to how I would resolve this appeal.

### 1.

First, I conclude that we should reverse the decision of the Bureau on the ground its decision is arbitrary and contrary to law.  The Bureau premised its decision on the ground that the unit proposed by the Union and the employees it represents does not match one of the four basic bargaining groups and the Union did not present compelling reasons that a different unit should be authorized.  The concept of four basic bargaining groups itself is an arbitrary construct of the Bureau.  PELRA says nothing of the sort when it comes to local government employees.  In contrast to a set of preordained categories of

presumptively appropriate bargaining units—or even to the notion that occupational groups are favored over departmental or other groups—section 179A.09, subdivision 1, requires consideration of several distinct factors on a case-by-case basis. And the fact that the statute provides for legislatively mandated categories of presumptively appropriate bargaining groups for employees of the state executive branch and other groups of public employees but *not* for employees of counties and other local governments only makes that conclusion clearer.

In short, the Bureau's policy for county unit determination decisions is arbitrary and directly contrary to section 179A.09, subdivision 1.[13] Because the Bureau's decision in this case was expressly driven by that policy—not only did the Bureau expressly say as much, but the policy permeates the decision—I agree with the court's decision to reverse and remand to the Bureau to properly apply the factors set forth in section 179A.09, subdivision 1.

---

[13] The conclusion that the Bureau's decision was arbitrary and contrary to the statute is also shown when compared to another recent Bureau unit determination decision. In *Law Enforcement Labor Services & Anoka County*, BMS Case No. 21-PCE-0336, at 2, 5 (Feb. 24. 2021), the Bureau found appropriate a unit of office investigators within the Midwest Medical Examiner's Office (an agency within the County Administration Department of Anoka County). The Bureau reasoned:

> Having established multiple essential units with the County diminishes the argument against fragmentation. The particular importance on desires of the petitioning employee representative, and history and extent of organization strongly favor the determination of an appropriate unit of Office Investigators. The principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, relevant administrative and supervisory levels of authority, and geographical location all favor and disfavor the Employer's arguments given some employees share interest while others do not.

*Id.* at 6.

2.

In its decision, the Bureau also misapplied several of the statutory factors and improperly balanced the statutory factors. As a preliminary matter, the balancing under section 179A.09, subdivision 1, is not a list of items that can be assigned to the employee or the employer and the side with the most boxes checked prevails; it requires active balancing on a case-by-case basis in service of answering the essential question of whether the bargaining unit proposed by the organizing employees and their representative is an appropriate unit (again, not the most appropriate unit or the Bureau's preferred unit). *Cf. State v. Mikell*, 960 N.W.2d 230, 245 (Minn. 2021) (discussing the multi-factor balancing test in speedy-trial cases); *see also Olson v. One 1999 Lexus*, 924 N.W.2d 594, 606 (Minn. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)) (observing that the *Mathews* factors applied in procedural due process cases "are more than a checklist of items to be ticked through selectively or by rote"). In addition, I also observe that it is more useful and consistent with the statute to ask whether a factor suggests that the proposed bargaining unit is appropriate or inappropriate; not whether the factor favors the employees and their representative or the employer.

Further, the Bureau applied the statutory criteria set forth in section 179A.09, subdivision 1, to answer the wrong question. Instead of applying those criteria to answer the question of whether the bargaining unit proposed by the Union was an appropriate unit (the proper question), it instead applied the statutory criteria to answer the question of whether there was a reason to depart from the Bureau's preferred four-basic-bargaining-unit structure. Indeed, the Bureau said so explicitly: "The Bureau's

view in favor of four broad occupationally based bargaining units in county government is a general preference and subject to examination considering the statutory criteria outlined in Minn. Stat. § 179A.09 and the facts of the particular case." *Anoka Cnty.*, BMS Case No. 22-PCE-0989 at 6. The fact that the Bureau was asking and answering the wrong question informed how it applied the statutory factors and that led to several of its legal errors in doing so. And for this reason, my analysis of the legal errors in the Bureau's consideration of the statutory factors flows directly from *the court's* holding in this case that the Bureau started its analysis in the wrong place. The court simply did not follow through on the implications of its holding, but rather left it to the Bureau to reconsider its decision of the factors in light of that holding.

With that background in mind, I now consider the individual factors set forth in section 179A.09, subdivision 1.

The principles and the coverage of uniform comprehensive classification and compensation plans suggest that the proposed bargaining unit is not appropriate. I disagree with the Union that the Bureau cannot consider how employees within the proposed bargaining unit compare with other county employees who would not be part of the bargaining unit with regard to classification and compensation. Such a comparison is inherent in assessing this factor. The focus is on the existence of a "uniform" and "comprehensive" classification and compensation plan that treats employees in similar roles in diverse county departments the same. Setting up a bargaining unit structure that allows a group of employees in one department to negotiate pay and other conditions of employment separate from similarly situated employees in other departments possibly

C-33

limits the effectiveness, comprehensiveness, and uniformity of the wage scales and other conditions of employment in a county-wide plan. The fact, however, that the employer previously chose to impose a uniform and comprehensive classification and compensation plan county-wide cannot be the tail that wags the unit determination dog. Otherwise, there would be no reason to consider any other factors.

For the reasons stated in the Bureau's decision, I agree that the "professions and skilled crafts and other occupational classifications" factor is neutral in this case.

I disagree with the Bureau that the "relevant administrative and supervisory levels of authority" indicates that the proposed bargaining unit is not appropriate. The Bureau's analysis of this factor was contrary to law. The Bureau reasons that because employees within the unit report to different supervisors—although there is no dispute that the chain of command ultimately runs to a single person (the elected Sheriff)—the administrative and supervisory structure does not create a sufficient community of interest among the clerical and technical employees within the Sheriff's Office. The phrase "community of interest" captures the concept that the employees in a bargaining unit should have a sufficient "mutuality of interest . . . to assure the coherence among employees necessary for efficient collective bargaining and at the same time to prevent a functionally distinct minority group of employees from being submerged in an overly large unit." *Allied Chem. & Alkali Workers, Loc. Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 172–73 (1971). "A cohesive unit—one relatively free of conflicts of interest—serves the Act's purpose of effective collective bargaining." *NLRB v. Action Auto., Inc.*, 469 U.S. 490, 494 (1985). Here, the Bureau made no finding and offered no explanation as to how

the administrative and supervisory structure for employees in the proposed bargaining unit creates such incoherence so as to prevent the clerical and technical employees in the Sheriff's Office and the employer to effectively negotiate. Just saying or implying so is not enough.

Further, it is hard to see how that would be the case, particularly since the "dissimilarity of supervisory levels" is even greater under the unit the Bureau ultimately concluded *is* appropriate. *Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989 at 8. If a bargaining unit that includes *all* clerical and technical workers in almost every department within the County is appropriate despite the inherent dissimilarity of supervisory levels in such a unit, the dissimilarity of supervisory levels within the Sheriff's Office should not render the proposed unit inappropriate. The flaw in the Bureau's reasoning arises from the fact that it improperly started its analysis of this factor against the backdrop of its "general preference" for four basic bargaining groups. *Id.* at 6 ("The Bureau's view in favor of four broad occupationally based bargaining units in county government is a general preference and subject to examination considering the statutory criteria outlined in Minn. Stat. § 179A.09 and the facts of the particular case."). In other words, the Bureau's reasoning demonstrates that it impermissibly approached this factor from the position that the appropriate group for the employees seeking to organize in this case is a broad group of all clerical and technical employees in Anoka County and then assessed whether the factor suggested that the narrower proposed bargaining unit was better than the Bureau's preference.

At best, this factor is neutral. The better position may be that because the employees in the Sheriff's Office all ultimately report to one individual who is independently elected by, and independently accountable to, the voters of Anoka County, the factor supports a determination that the proposed bargaining unit is an appropriate unit. But the Bureau can resolve that issue applying the proper inquiry.

For similar reasons, I find the Bureau's somewhat myopic assessment of geographic location to be contrary to law. The record shows that the employees seeking to organize work in two locations (the jail in downtown Anoka and the Sheriff's Office in Andover) and also that most of the employees only interact with other Sheriff's Office employees, and not other county employees, on a daily basis, presumably because other county employees do not generally work in the jail or the Sheriff's Office locations. Thus, *within* each of the two geographic locations of the Sheriff's Office, there is significant commonality among the employees.

That suggests that the proposed bargaining unit is an appropriate unit. And as with the administrative and supervisory levels of authority, it defies common sense to conclude that a bargaining unit that includes all clerical and technical workers in almost every department who work in even more locations is appropriate despite the geographic diversity, but that a bargaining unit that includes employees seeking to organize within the Sheriff's Office who work at two locations where the vast majority of employees work for the Sheriff's Office is inappropriate.

The "recommendation of the parties" factor focuses on whether the parties have agreed on a proposed bargaining unit. *See* Minn. R. 5510.0410, subp. 3; Minn. R.

C-36

5510.1810, subp. 2 (2023) (stating requirements for a joint-party petition for unit clarification). It is important to note for consideration on remand that the word "recommendation" is singular—it refers to a joint recommendation of the parties; it does not suggest that the "positions" of the employees seeking to organize and the employer are entitled to equal weight in the analysis of an appropriate unit. Indeed, the statutory history shows that the Legislature affirmatively eliminated any independent consideration of the desires of the employer from the list of factors that "shall" be taken into account in the unit determination decision. *See supra* n.6. Because the Union and Anoka County made no joint recommendation, the factor is irrelevant in this case.

I agree with the Bureau that the relevant history of organizing supports a conclusion that the proposed bargaining unit is an appropriate unit, although it is not clear the Bureau gave the extra weight to this factor that the statute requires. There is no dispute that the Union already is the exclusive representative for the majority of employees in the Sheriff's Office. In addition, previous efforts to organize all of the clerical and technical employees of Anoka County failed. *See Minn. Teamsters Pub. & L. Enf't Emps. Union, Loc. No. 320 & Cnty. of Anoka*, BMS Case No. 90-PCE-3223 (Oct. 16, 1990) (noting that Teamsters 320 did not prevail in an election to be certified as exclusive representative for a unit of all clerical and technical employees of Anoka County) [opinion attachment]; *see also Anoka Cnty. & AFSCME Council 5*, BMS Case No. 22-PCE-1956, at 2–5 (Aug. 4, 2022) (setting forth the history of efforts to organize all clerical and technical employees of Anoka County). The Bureau correctly explained in its decision:

> We . . . find persuasive the fact that an appropriate unit consisting of the entire clerical/technical employee class was certified and the parties never reached a collective bargaining unit. We take this as strong evidence that a broad bargaining unit would not lead to stable and constructive labor relations.

*Anoka Cnty. & L. Enf't Lab. Servs., Inc.*, BMS Case No. 22-PCE-0989 at 9 (quoting *L. Enf't Lab. Servs., Inc. & Anoka Cnty.*, BMS Case No. 21-PCE-0336, at 5 (Feb. 24, 2021) [opinion attachment]); *see also L. Enf't Lab. Servs. and Anoka Cnty.*, BMS Case No. 21-PCE-0336 at 5 (stating that "[w]e also find persuasive the fact that an appropriate unit consisting of the entire clerical/technical employee class was certified and the parties never reached a collective bargaining unit. We take this as strong evidence that a broad bargaining unit would not lead to stable and constructive labor relations"). On remand, the Bureau should place particular importance on this factor as required by the statute.

The Bureau committed legal error in its assessment of the extent of organization, another factor upon which the Bureau must place extra emphasis. As discussed above, extent of organization refers to "[t]he scope of the union's organizing campaign, that is, the groups of employees on which the union has focused its organizing efforts," *The Developing Labor Law*, *supra*, at 11-10, which is assessed by considering the "grouping of employees [that] has expressed support for the union." May 2002 AFSCME-Anoka County Decision at 3. The employees who have expressed support for the union are the clerical and technical employees in the Sheriff's Office. That indisputably supports a conclusion that the proposed bargaining unit is an appropriate unit. *See L. Enf't Lab. Servs. & Anoka Cnty.*, BMS Case No. 21-PCE-0336 at 4 ("In the instant case the Union has support from the [group of employees seeking to be organized as a unit]. This factor

C-38

supports the Union's position [that] there is a community of interest."); *see also* Minn. Stat. § 179A.01(c)(1) (providing that the balancing of the interests of public employees, public employers and the public is best served by "granting public employees certain *rights to organize* and *choose freely their representatives*" (emphasis added)).

The Bureau disagreed for two reasons. First, it placed the burden on the Union to prove that no *other* clerical and technical employees in Anoka County wanted to organize and be represented by the Union. But nothing in the statute requires the Union to carry that burden and the Bureau cites no authority to support that proposition.[14]

Second, the Bureau noted that another group of Anoka County clerical and technical employees—those that work in the Anoka County libraries—are also seeking to organize under a different union. But all that tells us is that a different subset of clerical and technical employees of Anoka County (a department quite distinct from the Sheriff's Office) also want to organize and choose a representative of *their* choice (a different representative) to represent their collective interests. At most, the independent organizing efforts of the Sheriff's Office employees and the Anoka County library employees suggests that, under an alternative set of historical and procedural facts, a unit consisting of clerical and technical employees of the Sheriff's Office and the Anoka County library system *may also* be an appropriate union (although the purposes of the two departments are unique and the union each group seeks to represent them is different). But the possibility that a single unit

---

[14]     In *Anoka County and AFSCME Council 5*, BMS Case No. 22-PCE-1956 at 11, the Bureau noted that another union seeking approval of a bargaining unit of clerical, technical and professional employees of the Anoka County library system reached out to other Anoka County departments about organizing and received no response.

consisting of library and Sheriff's Office employees may be appropriate does *not* mean that the proposed bargaining unit limited to Sheriff's Office employees is not "an" appropriate unit—and that is the statutory question the Bureau is directed by the Legislature to answer. More pertinent to this appeal, the existence of independent organizing efforts of two subsets of Anoka County employees does *not* mean that a unit consisting of all currently unorganized clerical and technical employees in the entire county is an appropriate unit. In short, the extent of organization factor—that this group of employees from the Sheriff's Office has expressed an interest in organizing a bargaining unit consisting of the clerical and technical employees in the Sheriff's Office; not a bargaining unit that includes employees of the Sheriff's Office *and* employees of the Anoka County library system (let alone all unorganized clerical and technical employees in the entire county)—supports the conclusion that the Union's proposed bargaining unit is an appropriate unit.

Even more damning to the Bureau's conclusion in this case is that the Bureau entirely disregarded one factor. Section 179A.09, subdivision 1, expressly states that it "shall consider . . . the desires of the petitioning employee representatives"—the desires of the Union. *See* May 2002 AFSCME-Anoka County Decision at 3 ; *Minn. State Coll. Bd.*, 228 N.W.2d at 561 (concluding that the fact that three of four employee representatives supported a statewide unit supported the conclusion that a statewide unit was an appropriate unit in light of the statutory language that the Bureau must "place particular importance" on the desires of the petitioning employee representatives). The court and I can speculate about why the Bureau failed to mention the factor, but it is undisputed that the Bureau performed no analysis of the factor. And here, this factor strongly and unequivocally

C-40

supports the conclusion that the proposed bargaining unit is an appropriate unit. Not only does the Union support the proposed unit, but LELS is an organization with a special expertise in organizing and representing public employees in law enforcement departments. The Bureau needs to give due weight to this factor.

Perhaps the most fundamental legal error made by the Bureau in this case is that it flipped the statutory presumption on its head. The statute plainly states that the preferences of the employees seeking to organize and their representatives as to the bargaining unit is the paramount consideration in determining whether a proposed unit is an appropriate unit. Here, the extent of organization and the desires of the petitioning employee representatives support the conclusion that the proposed unit is an appropriate unit. As the Bureau acknowledged in its decision, that conclusion is also supported by the other factor upon which the Bureau must place particular importance—the organizing history among clerical and technical workers in Anoka County.

Moreover, each of these factors properly considered tells us the larger, underlying narrative that the Bureau's rejection of the proposed unit and practical mandate that clerical and technical employees must organize another, and likely larger, bargaining unit means that the employees' "rights to organize and choose freely their representatives" are essentially denied. Minn. Stat. § 179A.01(c)(1). And that is not a surprise. The result is built into and inherent in the Bureau's presumptive four-basic-bargaining-unit policy. That result is also directly contrary to what the Legislature said in PELRA. The fact that the three paramount factors favor a determination that the proposed unit is an appropriate unit

must be the starting point for the Bureau when it considers whether the proposed unit is an appropriate unit on remand.

For these reasons, I concur in the court's decision to reverse the court of appeals and remand the case to the Bureau to reconsider whether the bargaining unit of all clerical and technical employees in the Anoka County Sheriff's Office is an appropriate unit under section 179A.09, subdivision 1.


PROCACCINI, Justice (concurring).

I agree with the court's decision to reverse and remand this unit determination proceeding to the Minnesota Bureau of Mediation Services (the Bureau). For the reasons provided in parts A and B of his concurrence, I agree with Justice Thissen's conclusion that the Bureau's stated four-unit policy presumption for county unit determinations is arbitrary and contrary to law. I otherwise agree with the court that we should be wary of second-guessing the Bureau's fact-intensive and reasoned analysis of the factors set forth in Minn. Stat. § 179A.09, subd. 1, even if we may have come to different conclusions ourselves. Accordingly, I join parts A, B, and C.1 of Justice Thissen's concurrence, but I do not join part C.2.



# STATE OF MINNESOTA
## PUBLIC EMPLOYMENT RELATIONS BOARD
Room 598, Space Center Building
444 Lafayette Road
SAINT PAUL 55155 55101
612-296-8947

IN THE MATTER OF:

American Federation of State, County and Municipal Employees
Council No. 65, Hibbing, Minnesota
    and
Independent School District No. 480, Onamia, Minnesota

CASE NO. 77-PR-802-A

## DECISION

### I. Procedural History

The American Federation of State, County and Municipal Employees Council No. 65, Hibbing, Minnesota (hereinafter "Council No. 65") appeals from a decision of the Director of the Bureau of Mediation Services (hereinafter "Director") establishing appropriate bargaining units for certain employees of Independent School District No. 480, Onamia, Minnesota. The Director determined the following bargaining units to be appropriate:

UNIT NO. 1: All secretarial/clerical employees, school aides, and school nurses of Independent School District No. 480, Onamia, Minnesota, who are employed for more than 14 hours per week and more than 100 work days per year, excluding supervisory, confidential, and all other employees.

UNIT NO. 2: All Food Service employees of Independent School District No. 480, Onamia, Minnesota, who are employed for more than 14 hours per week and more than 100 work days per year, excluding supervisory, confidential, and all other employees.

UNIT NO. 3: All custodial and maintenance employees of Independent School District No. 480, Onamia, Minnesota, who are employed for more than 14 hours per week and more than 100 work days per year, excluding supervisory, confidential, and all other employees.



UNIT NO. 4:   All employees of the Transportation
Department of Independent School District No. 480, Onamia,
Minnesota, who are employed for more than 14 hours per
week and more than 100 work days per year, excluding
supervisory, confidential, and all other employees.

UNIT NO. 5:   All supervisory employees of Independent
School District No. 480, Onamia, Minnesota, who are not
required to be certificated by the State Board of
Education, and who are employed for more than 14 hours per
week and more than 100 work days per year, excluding
confidential and all other employees.

UNIT NO. 6:   All confidential employees of Independent
School District No. 480, Onamia, Minnesota, who are not
required to be certificated by the State Board of
Education, and who are employed for more than 14 hours per
week and more than 100 work days per year, excluding
supervisory and all other employees.

This matter was initiated by a petition filed with the
Director on May 10, 1977, by which Council No. 65 requested
determination of appropriate bargaining units and certification as
the exclusive representative.  The petition requested the Director
to designate as an appropriate unit "All non-teaching employees
of Independent School District 480 excluding employees who work
less than 14 hours per week or 100 days per year."

On June 2, 1977, a hearing on the petition was conducted by
a hearing officer of the Bureau of Mediation Services.  At the
hearing, Council No. 65 amended its petition to request a unit of
supervisory employees and a unit of confidential employees in
addition to a unit of all other non-certificated employees of the
school district.  The school district requested the six units
ultimately determined by the Director.

In his decision, dated June 15, 1977, the Director found
that a sufficient showing of interest had been submitted in Unit
Nos. 3, 4, 5, and 6 and, pursuant to an agreement of the parties,
he ordered a mail ballot election for those units.  As to Unit
Nos. 1 and 2, a sufficient showing of interest was not submitted
and no election was ordered in those two units.

After receiving notice of this appeal filed by Council No. 65,
the Director ordered the election ballots impounded before
tabulation pending the decision of the Public Employment Relations
Board.

- 2 -

Pursuant to Minn. Stat. § 179.72, subd. 4 (1976), this appeal is before the Board on the record established by the Director.

## II. Issue

Based on the record, was the Director correct in designating a unit of secretarial/clerical employees, school aides, and school nurses; a unit of food service employees; a unit of custodial and maintenance employees; and a unit of transportation employees, rather than a single unit of non-supervisory, non-confidential employees as requested? 1/

## III. Decision

The Board, after consideration of the record, determines this appeal as follows:

One general unit of non-certificated employees, excluding supervisory and confidential employees, is found to be appropriate. Unit Nos. 1, 2, 3, and 4, as found by the Director, should be merged into one unit.

Accordingly, the unit determination of the Director is reversed as to Unit Nos. 1, 2, 3, and 4. The matter is remanded to the Director for further proceedings not inconsistent with this decision. 2/

## IV. Discussion

Appropriate bargaining units for public employees are to be designated in accordance with the criteria set forth in Minn. Stat. § 179.71, subd. 3 (1976), which provides:

> . . . In determining the appropriate unit he /the Director/ shall take into consideration, along with other relevant factors, the

---

1/  The parties agree that Unit Nos. 5 and 6 are appropriate. Since the issue is not presented, the Board takes no position as to the appropriateness of these units.

2/  In view of the disposition of this matter, the Board need not express any opinion as to whether the school nurse was properly placed in Unit No. 1 with clerical and secretarial personnel.

- 3 -

principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, involvement of professions and skilled crafts and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, and the recommendation of the parties, and shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives.

As grounds for reversal of the Director's determination, Council No. 65 contends that the statutory criteria quoted above were not properly applied and that the Director's decision is without factual support in the record. In particular, Council No. 65 alleges that proper weight was not accorded to the desires of the petitioning employee representative, the only statutory criterion supported by the record.

Section 179.71, subd. 3, makes it clear that the desires of the petitioning employee representative shall be given particular importance. In the instant case, the record affords little basis for the Director's decision and makes no reference to the specified statutory criteria.

The only factor cited by the Director to support his determination is the varying work years of the employees. The record indicates that the work years range from nine to twelve months. Work year length has little bearing on any other term or condition of employment. In any event, the Director's reliance on this factor is seriously undermined by the fact that his decision places employees of varying work years in the same bargaining unit. That single criterion of work year length does not warrant rejection of the requested unit in view of the particular importance placed by the statute on the desires of the petitioning employee representatives.

Pursuant to Minn. Stat. § 179.71, subd. 3 (1976), the role of the Board as well as that of the Director is to determine if the unit petitioned for is "an" appropriate bargaining unit. No provision of the Public Employment Labor Relations Act mandates that collective bargaining in a proposed unit which is otherwise appropriate is to be denied simply because another unit may be conceptually "most" appropriate. See University of Minnesota

- 4 -

Board of Regents, et al., PERB Case Nos. 73-PR-571-A, 74-PR-59-A, 74-PR-66-A, 74-PR-93-A (November 26, 1975), aff'd. sub nom. Regents of the University of Minnesota v. Public Employment Relations Board, No. 408812 (Ramsey County District Court, September 26, 1977).

The Board finds that the requested general unit is appropriate. The record provides no basis for the Director's decision to reject the proposed unit. That part of his decision, accordingly, is reversed and the matter remanded for further proceedings not inconsistent with this opinion.

_Don L. Bye_
Don L. Bye

_Peter Obermeyer_
Peter Obermeyer

_George Seltzer_
George Seltzer

Dated at Saint Paul, Minnesota,
November 10, 1977



### BUREAU OF MEDIATION SERVICES

State of Minnesota



January 4, 1998

American Federation of State, County and Municipal Employees, Council No. 65,
Nashwauk, Minnesota
      - and -
County of Morrison, Little Falls, Minnesota

BMS Case No. 99-PCE-402

Before:   Peter Obermeyer
          Hearing Officer

## CERTIFICATION UNIT DETERMINATION

### INTRODUCTION

On Monday, December 14, 1998, the Bureau of Mediation Services, State of Minnesota (Bureau) conducted a hearing pursuant to a petition received from the American Federation of State, County and Municipal Employees, Council 65, Nashwauk, Minnesota (Council 65). The petition requested the determination of an appropriate unit and certification of Council 65 as the exclusive representative of certain employees of the County of Morrison, Little Falls, Minnesota (County).

### PARTIES

At the hearing Mr. Steve Preble, Staff Representative, appeared on behalf of Council 65; and Mr. Bernie Steffen, Labor Counsel, represented the County.

### ISSUE

What is the appropriate unit for employees of the Court Administrators' Department of the County?

Resp.Add.008

## DISCUSSION

1. **Introduction**. The current County bargaining structure is composed of three appropriate units. Council 65 is the exclusive representative of certain employees in both the Social Services Department and the Highway Department. Law Enforcement Labor Services, represents essential employees of the Sheriff's Department. All other employees of the County are not represented by a labor organization at the time this petition was filed with the Bureau.

At issue is whether the non-supervisory and non-confidential employees of the Court Administrator's Department comprise an appropriate unit for the purpose of collective bargaining. Council 65 argues that a departmental unit of Court Administrator's employees is supported by the union, favored by the employees involved, and not in conflict with the Public Employment Labor Relations Act (PELRA) or Bureau decision policy. The County disagrees. They concluded that all office-clerical-administrative, technical, and professional employees of the County, that are not currently represented, make-up the dimensions of the unit appropriate for collective bargaining. A "courthouse" wide bargaining unit is consistent with the county-wide nature of its operations and personnel system, argued the County.

2. **Bureau Appropriate Unit Decision Policy**. The Bureau has developed a decision policy preference for the establishment of four basic units in County government. [1] Absent compelling reasons otherwise, units of essential, [2] highway maintenance and public works, social service department, and county-wide office-clerical-administrative, technical, and professional employees will generally be determined as appropriate.

This policy favors the establishment of appropriate units which are based on broad occupational groups - essential, public works, and office-clerical-administrative, technical, and professional. The exception to this broad occupational group standard, is our finding that all employees of a social services department make-up a separate unit. A separate unit of social service employees is appropriate because of unique relationship with the Minnesota Merit System. [3] This personnel system directly impacts certain "terms and conditions of employment" of county

---

[1] American Federation of State, County and Municipal Employees, Council 65 and County of Sibley, BMS Case No. 83-PR-48-A and American Federation of State, County and Municipal Employees, Council 65 and County of Redwood and Law Enforcement Labor Services, BMS Case No. 90-PCE-2003.
[2] Note that under certain conditions licensed and non-licensed essential employees of a sheriffs department have the right to vote for separation into an appropriate unit of licensed and non-licensed employees.
[3] American Federation of State, County and Municipal Employees, Council 65 and County of Stearns, BMS Case No. 85-PR-151-A.

Resp.Add.009

social services employees. Accordingly, such employees have been allocated a separate bargaining unit from other office-clerical-administrative, technical, and professional employees of a county.

This bargaining structure preference of the Bureau accurately applies the unit determination criteria of the PELRA.[4] In addition, such a bargaining structure considers the general "community of interest" of all County employees and is supportive of effective collective bargaining for both labor and management.

3.      **Facts of this Case.**    The record in this case establishes a distinct "community of interest" among all employees of the County. Reflective of this "community of interest" are the following:

* county-wide comprehensive personnel system;

* salary, insurance, and fringe benefit compensation package which is common to all non-represented employees;

* similar geographic work location;

* transfer and promotion opportunities among departments; and

* centralized administration through a County Coordinator reporting to the County Board of Commissioners.

Notwithstanding the desires of the Court Administrator's Department employees, the support of Council 65, and the close working relationship of the employees to the judicial system, we conclude that a separate departmental unit of Court Administrators employees is not an appropriate unit for collective bargaining.

4.      **Conclusion.**    We conclude that the record in this case supports the County's position that a county-wide office-clerical-administrative, technical, and professional unit is appropriate for collective bargaining. Therefore, Council 65's petition will be dismissed.

---

[4] Minn. Stat. 179A.09, Subd. 1.

Resp.Add.010

## FINDINGS AND ORDERS

1. A county-wide unit of office-clerical-administrative, technical, and professional employees is appropriate for collective bargaining.

2. A departmental unit of Court Administrators' employees is not appropriate for collective bargaining.

3. The unit determination and certification as exclusive representative petition of Council 65 is dismissed for lack of a "showing of interest" in the unit determined appropriate.

4. This Order shall be posted in the work locations of the employees involved.

STATE OF MINNESOTA
Bureau of Mediation Services

LANCE TEACHWORTH
Commissioner

Peter E. Obermeyer
Hearing Officer

cc:   Steve Preble
      Tim Houle  (2 copies - including Posting Copy)
      Bernie Steffen

Resp.Add.011

**BMS**

BUREAU OF MEDIATION SERVICES

State of Minnesota

IN THE MATTER OF A PETITION FOR               SEPTEMBER 12, 1989
INVESTIGATION AND DETERMINATION
OF PUBLIC EMPLOYEES' APPROPRIATE
UNIT AND EXCLUSIVE REPRESENTATIVE:


American Federation of State, County and Municipal Employees,
Council No. 65, Hibbing, Minnesota
        - and -
County of Redwood, Redwood Falls, Minnesota
        - and -
Law Enforcement Labor Services, Inc., Bloomington, Minnesota

BMS CASE NO.   90-PCE-2003


## CERTIFICATION UNIT DETERMINATION

### Introduction

On Wednesday, August 9, 1989, a hearing was conducted by the State
of Minnesota, Bureau of Mediation Services (Bureau), pursuant to
a petition filed by the American Federation of State, County and
Municipal Employees, Council No. 65, Hibbing, Minnesota (Council
65).  The petition requested determination of an appropriate unit
and certification as exclusive representative for certain employees
of the County of Redwood, Redwood Falls, Minnesota (County).  Law
Enforcement Labor Services, Inc., Bloomington, Minnesota (LELS),
was made a party to this case.

### Parties

At the hearing Mr. Steve Giorgi, Staff Representative, appeared on
behalf of Council 65; Mr. Howard Hoy, Consultant, appeared on
behalf of the County; and Mr. Thomas Skelly, Staff Representative,
appeared on behalf of LELS.

### Motions of Agreement

At the hearing the parties agreed to the following:

  1.    The following employees are essential
        within the meaning of Minn. Stat. 179A.03,
        subd. 7:

                    Brian Berg, Jailer Dispatcher
                    Dale Davis, Jailer Dispatcher

Resp.Add.001

2. All Department Heads are excluded from the appropriate unit.

3. The following employees are supervisory within the meaning of Minn. Stat. 179A.03, subd. 17:

> Ernest Fiala, Assistant County Engineer
> Fred Henkel, Jr., Maintenance Superintendent
> Edmund Plaetz, Highway Shop Superintendent
> Richard Aakre, Social Services Supervisor I
> Doris McCorquodale, Financial Supervisor I
> Lyn Rayburn, Fiscal Supervisor I

4. Patricia Burgemeister, Personnel Assistant, Personnel Office, is a confidential employee within the meaning of Minn. Stat. 179A.03, subd. 4.

## Issues

1. What is the description of the appropriate unit?

2. The list of employees falling within the appropriate unit.

3. Are the following employees confidential within the meaning of Minn. Stat. 179A.03, subd. 4:

> Arlene Helwig, Junior Office Manager/
> Legal Secretary (Office of the County
> Attorney)

> Rita Wienke, Account Officer/Board
> Secretary (Office of the Auditor/Treasurer)

> Paula Olson, Assistant Accountant (Highway
> Department)

4. Is Nancy Schmidt, Accountant (Highway Department), a confidential employee within the meaning of Minn. Stat. 179A.03, subd. 4; or a supervisory employee within the meaning of Minn. Stat. 179A.03, subd. 17?

Resp.Add.002

5.    Has Council 65 submitted the required showing
      of interest through valid authorization cards
      to warrant the conduct of an election?

**Discussion**

1. **Bargaining Structure**. In establishing the bargaining structure
for county government the Bureau has followed a general policy
favoring four separate appropriate units. 1/ Absent compelling
reasons, units of broad occupational groups composed of essential,
highway maintenance, social service department, and office-
clerical-technical-professional employees are determined
appropriate.

Although not an "occupational group," employees of the social
service department have been given a separate unit because of their
unique relationship with the Minnesota Merit System which covers
certain personnel policies and practices. 2/ Such a bargaining
structure weighs the unit determination criteria of the Public
Employment Labor Relations Act (PELRA), the organizational
structure of county government, and the community of interest of
the employees involved. The record in this case supports a similar
finding that a unit of office-clerical-technical-professional
employees is appropriate.

Council 65 argues, however, that employees of the Public Health
Nursing Service (PHNS) should be excluded from this base unit
because PHNS employees do not share a "community of interest" with
the other employees in the base unit. The Bureau faced this issue
in the Sibley County case 3/ where the Bureau found that a distinct
"community of interest" existed between public health nursing
personnel and office-clerical-technical-professional employees.

---

1/    Law Enforcement Labor Services, Inc. and County of McLeod,
      BMS Case No. 87-PR-418-A; and American Federation of State,
      County and Municipal Employees, Council No. 65 and County of
      Sibley, BMS Case No. 83-PR-48-A.

2/    American Federation of State, County and Municipal Employees,
      Council No. 65 and County of Stearns, BMS Case No.
      85-PR-151-A.

3/    Supra., County of Sibley.

Resp.Add.003

A similar "community of interest" exists in this case between the PHNS and employees in the appropriate unit, which is reflected by a common system of compensation, a common organizational and supervisory structure, and a common personnel policy. The request to exclude PHNS employees is, therefore, inconsistent with the record and Bureau case precedents.

2.  **Confidential**. Confidential employee exclusions are based in the concept that the employer has the need to limit union access to bargaining information and strategies. 4/  Access to such information and strategies is legitimately reserved by the employer until such time that proposals and counter-proposals are made to the union.  Employees who assist the employer in the preparation and management of such information are denied the right to bargain with other employees of the same employer. Because employees found to be confidential have limited collective bargaining rights, the Bureau has "narrowly" defined confidential status 5/ and rejected administrative convenience as a justification for determining an employee confidential. 6/  The resulting balance of employer and employee rights provides a workable means to implement the purposes of the PELRA.

The County contends that four employees meet the confidential test of the PELRA.  Mrs. Arlene Helwig, Junior Office Manager/Legal Secretary is employed in the office of the County Attorney. Currently Ms. Helwig has no duties or responsibilities which are confidential in nature.  It is suggested by the County that Ms. Helwig may, in the future, have work tasks involving access to labor contracts to be reviewed by the County Attorney.  Such duties and responsibilities are prospective in nature and as such are not an acceptable basis for exclusion from the unit. 7/

---

4/  Minn. Stat. 179A.03, subd. 4.

5/  American Federation of State, County and Municipal Employees, Council No. 65 and Independent School District No. 761, BMS Case No.  86-PR-414.

6/  County of Ramsey and American Federation of State, County and Municipal Employees, Council No. 14, BMS Case No. 82-PR-67-A.

7/  Independent School District No. 38 and Minnesota School Employees Association, BMS Case No.  84-PR-778-A; and County of McLeod and American Federation of State, County and Municipal Employees, Council No. 65, BMS Case No. 84-PR-1076-A.

Resp.Add.004

As the "secretary" to the County Commissioners Ms. Rita Wienke, Accounting Officer/Board Secretary, attends all meetings of the County Board of Commissioners. At such meetings she is responsible for recording the session and transcribing minutes of the meeting when necessary. In her role as Board "secretary" Ms. Wienke regularly attends meetings of the County Board closed to the public for the purpose of discussing collective bargaining goals, progress, and strategies. Such access to confidential bargaining information and strategies is reflective of a confidential employee.

Nancy Schmidt, Accountant (Highway Department), and Paula Olson, Assistant Accountant (Highway Department) perform general office-clerical, financial, and payroll duties and responsibilities for the County Highway Department. In this capacity Ms. Schmidt performs certain personnel functions for the County Engineer. These responsibilities involve the conduct of performance evaluations, preparation of performance evaluations and letters of discipline. In addition, Ms. Schmidt has access to departmental personnel files on a regular and recurring basis. These duties are reflective of a confidential employee. 8/

Although working in the same office as Ms. Schmidt, Paula Olson's involvement in the personnel function is limited and sporadic. Ms. Olson's irregular involvement with personnel matters is not a sufficient basis to exclude her as confidential. Such involvement is not indicative of operational need, but rather administrative convenience. Administrative convenience has been rejected as a valid basis for finding confidential status by both the Bureau and the Public Employment Relations Board. 9/

### Findings

1. The motion of agreement is appropriate.

2. The unit shall consist of office-clerical-technical-professional employees of the County.

---

8/ Inasmuch as Ms. Schmidt is excluded as confidential, the issue as to whether she is supervisory will not be addressed.

9/ County of Ramsey and American Federation of State, County and Municipal Employees, Council No. 14, BMS Case No. 82-PR-67-A, October 12, 1981.

Resp.Add.005

3.  The clerical and technical employees of the Highway Department and the employees of the Public Health Nursing Service Department are included within the appropriate unit.

4.  The following employees are not confidential within the meaning of Minn. Stat. 179A.03, subd. 4:

> Arlene Helwig, Junior Office Manager/ Legal Secretary (Office of the County Attorney)
>
> Paula Olson, Assistant Accountant (Highway Department)

5.  The following employees are confidential within the meaning of Minn. Stat. 179A.03, subd. 4:

> Rita Wienke, Account Officer/Board Secretary (Office of the Auditor/Treasurer)
>
> Nancy Schmidt, Accountant (Highway Department)

6.  Council 65 has submitted the required showing of interest through valid authorization cards to warrant the conduct of an election.

## Orders

1.  The appropriate unit is described as:

> All office-clerical-technical-professional employees of Redwood County, Redwood Falls, Minnesota, who are public employees within the meaning of Minn. Stat. 179A.03, subd. 14, excluding maintenance employees of the Highway Department, employees of the Social Service Department, supervisory, confidential and essential employees.

2.  A mail-ballot election shall be conducted among the employees falling within the appropriate unit in accordance with the attached Mail Ballot Election Order.

Resp.Add.006

3.    The County shall post this Order at the work
      locations of all employees involved.

## Notice of Reconsideration and Appeal Procedure

A party may file a request for reconsideration of this Order by the
Commissioner, provided such written request is received within ten
(10) calendar days and sets forth the basis for such
reconsideration.  This Order may also be appealed to the Public
Employment Relations Board.  Minnesota Rules Parts 5510.2210 and
7300.0700, govern such request and appeals.

STATE OF MINNESOTA
Bureau of Mediation Services

PAUL W. GOLDBERG,
Commissioner

BY: _____
JEAN L. KING,
Representation Unit Director

JLK:PEO:JLT:jj

cc:   Steve Giorgi
      Howard Hoy
      Thomas Skelly
      County Auditor (2)
         (Includes Posting)

Resp.Add.007

# STATE OF MINNESOTA

## BUREAU OF MEDIATION SERVICES

205 AURORA AVENUE
SAINT PAUL 55103

PHONE 612-296-2525

IN THE MATTER OF A PETITION FOR
INVESTIGATION AND CERTIFICATION
OF PUBLIC EMPLOYEES' APPROPRIATE
UNIT AND EXCLUSIVE REPRESENTATIVE:

American Federation of State, County & Municipal Employees, Council No. 65,
Hibbing, Minnesota
    -and-
County of Sibley, Gaylord, Minnesota

CASE NO. 83-PR-48-A

## UNIT DETERMINATION

### Introduction

On Friday, August 27, 1982, a hearing was held by the Bureau of Mediation Services, State of Minnesota, at the Sibley County Courthouse, Gaylord, Minnesota, pursuant to a petition filed by the American Federation of State, County & Municipal Employees, Council No. 65, Hibbing, Minnesota. The petition requested determination of appropriate unit and certification as exclusive representative for certain employees of the County of Sibley, Gaylord, Minnesota.

At the hearing all interested parties were provided an opportunity to present testimony and evidence pertinent to the questions raised by the filing of the petition.

### Parties

Mr. Peter E. Bergstrom, Attorney at Law, appeared on behalf of the County of Sibley; and Mr. William Moore, Staff Representative, appeared on behalf of AFSCME Council No. 65.

### Issues

1. What is the appropriate unit?

2. Are certain employees supervisory?

3. Are certain employees confidential?

4. Has the petitioner submitted the required showing of interest through signed authorization cards to warrant the conduct of an election?

5. If an election is ordered, how should it be conducted?



AN EQUAL OPPORTUNITY EMPLOYER

Add.38

## Positions of the Parties

Mr. Bergstrom took the position that the following employees are supervisory in accordance with the statutory definition and should be excluded from the appropriate unit: Gary C. Kloempken, Assistant Auditor; Pat Zaska, Assistant Treasurer; Helen Ingvalson, Assistant Assessor; Eldrene Ebert, Assistant Recorder; Bonnie Paulsen, Office Manager; and Larry Gasow, Zoning Administrator. He further contended that Bernette Zumhoffe, Accountant, is confidential in accordance with the statutory definition and should be excluded from the appropriate unit.

Mr. Bergstrom also stated that all employees of the Public Health Nursing Department should be included in the unit.

Mr. Moore took the position that none of the above-listed employees are supervisory or confidential and should be included in the appropriate unit and that all employees of the Public Health Nursing Department should be excluded.

## Stipulations

At the hearing the parties stipulated that an on-site election shall be conducted by the Bureau.

## Supervisory Status

A. Applicable Statutes. Minn. Stat. 179.63, subd. 9, defines a "supervisory employee" as follows:

> "'Supervisory employee', when the reference is to other than essential employees as defined in subdivision 11, means any person having authority in the interests of the employer to hire, transfer, suspend, promote, discharge, assign, reward or discipline other employees or responsibly to direct them or adjust their grievances on behalf of the employer, or to effectively recommend any of the aforesaid actions, if in connection with the foregoing the exercise of such authority is not merely routine or clerical in nature but requires the use of independent judgment. Any determination of 'supervisory employee' may be appealed to the public employment relations board."

In conjunction with the above, Minn. Stat. 179.71, subd. 3, subd. 3, states in part:

> "In addition, with regard to the inclusion or exclusion of supervisory employees, the director must find that an employee may perform or effectively recommend a majority of those functions referred to in section 179.63, subdivision 9 or 9a, before an employee may be excluded as supervisory." (Emphasis added.)

B. Discussion. In the State of Minnesota, Department of Employee Relations v. Minnesota State Employees Union, AFSCME, Council No. 6 (BMS Case Nos. 82-PR-558-A through 82-PR-574-A and 82-PR-686-A), dated June 29, 1982, the Bureau found as follows:

"An employee who has not been given the 'authority' to perform supervisory functions must then be able to demonstrate an ability to effectively recommend the supervisory functions. This may be accomplished by:

1. Presentation of testimony and evidence which establishes that the employee's recommendations have been followed by the employer in the majority of cases; or

2. Lacking a record of experience; verification that the employee's recommendation would in fact be followed by the employer in the majority of cases.

Verification of the prospective 'effectiveness' of an employee's recommendation would be confirmed by establishing the following:

1. Affirmation by the individual employee involved of the ability to effectively recommend the supervisory functions; and

2. Explanation by the employee of how this authority would be exercised; and either

3. Substantiation of the employee's authority by a person within the employer's organization having greater supervisory authority; or

4. Written proof of the delegation of the authority to the employee, i.e., job description, personnel documents, etc."

Confidential Status

A. Applicable Statutes. Minn. Stat. 179.63, subd. 8, defines a "confidential employee" as follows:

"'Confidential employee' means any employee who works in the personnel offices of a public employer or who has access to information subject to use by the public employer in meeting and negotiating or who actively participates in the meeting and negotiating on behalf of the public employer."

Add.40

B. Discussion. The contention in this case is that Bernette Zumhoffe, Accountant, has access to personnel files and has "access to information subject to use by the public employer in meeting and negotiating". In determining whether an employee meets this standard of the definition of a confidential employee, the Bureau will consider the following:

1. Does the employee have access to information which is in the form of an employer's proposal?

2. Does the employee have access to information which is confidential to the employer only?

3. Has the employee participated in the preparation of the "information" to be used exclusively by the employer in developing proposals and counterproposals?

An employee who works with financial and budgetary information does not meet the definition of a confidential employee based on that fact alone. In the State of Minnesota, a substantial amount of employer information is available to the public as a matter of law. Therefore, the Bureau must analyze the statutory definition of a confidential employee particularly when dealing with "having access to information subject to use by the public employer in meeting and negotiating". The determination of confidentiality must reach beyond mere access and investigate the circumstances surrounding this access as indicated in the above standards.

Ms. Zumhoffe has access to the personnel files and to information subject to use by the public employer in meeting and negotiating.

Appropriate Unit

A. Applicable Statute. Minn. Stat. 179.71, subd. 3, states in part:

"The director shall determine appropriate units, except where appropriate units are defined by section 40. In determining the appropriate unit he shall take into consideration, along with other relevant factors, the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, involvement of professions and skilled crafts and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, and the recommendation of the parties, and shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives."

B. Discussion. In determining the bargaining structure of county government the Bureau has followed a policy of determining separate

bargaining units for certain employee categories. Law enforcement (or essential employees), public works, and employees subject to the Minnesota Merit System are traditionally assigned to separate units.

The establishment of a clerical-technical-professional unit or "courthouse" unit versus departmental units is the center of dispute in this case. AFSCME Council No. 65 argues for the exclusion of the Public Health Nursing Department from a base clerical-technical-professional unit of other county employees. The Bureau finds, that there is a definite community of interest between the Public Health Nursing Department and other county employees. This community of interest is reflected by common systems of compensation and job classification, occupational titles, supervisory structure, and a single personnel policy. Acceptance of the AFSCME Council No. 65 argument could result in a bargaining structure of individual departments. Such a structure, in the Bureau's opinion, would lead to fragmented bargaining disadvantageous to the employees, the union, and the employer. As we found in Minnesota School Employees Association v. Independent School Dist. No. 690, Warroad (BMS Case No. 81-PR-947-A), May 27, 1981, there is a distinct balance between the narrow community of interest of some employees and the excessive fragmentation of the bargaining structure.

## Findings

As Director of the Bureau of Mediation Services, State of Minnesota, I find:

1. The appropriate unit is:

   All employees of the County of Sibley, Gaylord, Minnesota, whose employment service exceeds the lesser of 14 hours per week or 35 percent of the normal work week and more than 100 work days per year, excluding employees of the Social Service Department, highway maintenance employees, essential employees, and supervisory and confidential employees.

2. Employees of the Public Health Nursing Department have a community of interest with other employees within the appropriate unit and are to be included in the unit.

3. Gary C. Kloempken, Assistant Auditor, is a supervisory employee within the meaning of Minn. Stat. 179.63, subd. 9, and is to be excluded from the unit.

4. Pat Zaske, Assistant Treasurer; Helen Ingvalson, Assistant Assessor; Eldrene Ebert, Assistant Recorder; Bonnie Paulsen, Office Manager; and Larry Gasow, Zoning Administrator, are not supervisory employees within the meaning of Minn. Stat. 179.63, subd. 9, and are to be included in the unit.

5. Bernette Zumhoffe, Accountant, is a confidential employee within the meaning of Minn. Stat. 179.63, subd. 8, and is to be excluded from the unit.

6. The petitioner has submitted the required showing of interest through signed authorization cards for the employees falling within the unit determined appropriate to warrant the conduct.

7. An on-site election shall be conducted by the Bureau.

Order

As Director of the Bureau of Mediation Services, State of Minnesota, I order:

1. An on-site election shall be conducted by the Bureau for the employees falling within the unit determined appropriate in accordance with an Election Order to be issued by the Bureau.

2. The employer shall post this order at the work locations of the employees involved.

BUREAU OF MEDIATION SERVICES
STATE OF MINNESOTA

PETER E. OBERMEYER, DIRECTOR

PEO:el

cc: William Moore
Gene Salmonsen (2) (Includes Posting)
Peter D. Bergstrom
Albert L. Church
Larry Gasow

Dated at St. Paul, Minnesota,
September 10, 1982

Add.43

IN THE MATTER OF:                                  CASE NO.   81–PR–947–A

Minnesota School Employees Association, St. Paul, Minnesota
    – and –
Independent School District No. 690, Warroad, Minnesota

### CERTIFICATION OF EXCLUSIVE REPRESENTATIVE

An election having been conducted in the above–entitled matter by an Agent of the Bureau of Mediation Services, State of Minnesota, in accordance with the Rules and Regulations of the Bureau, it is indicated from the tabulation of election results that an exclusive representative for collective bargaining purposes has been selected.

Eligible Voters                                             (13)
Votes for Minnesota School Employees Association            ( 9)
Votes for No Representative                                 ( 2)
            Total Votes                                     (11)

Pursuant to authority vested in the Bureau of Mediation Services, IT IS HEREBY CERTIFIED THAT   THE

MINNESOTA SCHOOL EMPLOYEES ASSOCIATION, ST. PAUL, MINNESOTA

has been designated and selected by a majority of the employees of the above–named employer who voted in the unit described below, as their exclusive representative for the purposes of collective bargaining, and that, pursuant to the Public Employment Labor Relations Act of 1971 as amended, the said organization is the exclusive representative of all the employees in such unit for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment.

UNIT:       All employees of Independent School District No. 690, Warroad, Minnesota, who are not required to be certificated by the State Board of Education, whose employment service exceeds the lesser of 14 hours per week or 35 percent of the normal work week and more than 100 work days per year, excluding employees of the Transportation Department and supervisory and confidential employees.

The Cease and Desist Order issued on ___March 12, 1981___, is hereby lifted in its entirety.
PEO:jj
cc:   Ed Dahle
      Stuart Blackorby (2)
         (Includes Posting)
      Robert A. Hughes
      Michael Pirsch

                                        DIRECTOR
                                        BUREAU OF MEDIATION SERVICES
                                        STATE OF MINNESOTA

Dated at St. Paul, Minnesota,
FORM BMS-59          June 29, 1981
(Rev. 1-75)                                          Add.44

**STATE OF MINNESOTA**

**BUREAU OF MEDIATION SERVICES**

VETERANS SERVICE BUILDING
SAINT PAUL 55155

PHONE 612-296-2525

IN THE MATTER OF:
INVESTIGATION AND CERTIFICATION OF
PUBLIC EMPLOYEES' APPROPRIATE UNIT:
AND EXCLUSIVE REPRESENTATIVE:

American Federation of State, County and Municipal Employees
Council No. 65, Hibbing, Minnesota
       -and-
Independent School District No. 480, Onamia, Minnesota

CASE NO. 77-PR-802-A

## AMENDMENT OF UNIT DETERMINATION

On June 15, 1977, the Bureau of Mediation Services issued a Unit Determination finding six appropriate units. The Unit Determination was appealed by the American Federation of State, County and Municipal Employees Council No. 65, Hibbing, Minnesota, as it pertained to Units 1, 2, 3, and 4. On November 10, 1977, the Public Employment Relations Board issued a decision finding that Units 1, 2, 3, and 4 should be combined into one bargaining unit.

Therefore, as Director of the Bureau of Mediation Services, State of Minnesota, I hereby amend the Unit Determination as issued and find the following appropriate units:

UNIT NO. 1:  All employees of Independent School District No. 480, Onamia, Minnesota, who are not required to be certificated by the State Board of Education, and whose employment service exceeds the lesser of 14 hours per week or 35 percent of the normal work week and more than 100 work days per year, excluding supervisory and confidential employees.

UNIT NO. 5:  All supervisory employees of Independent School District No. 480, Onamia, Minnesota, who are not required to be certificated by the State Board of Education, and whose employment service exceeds the lesser of 14 hours per week or 35 percent of the normal work week and more than 100 work days per year, excluding confidential and all other employees.

UNIT NO. 6:  All confidential employees of Independent School District No. 480, Onamia, Minnesota, who are not required to be certificated by the State Board of



**AN EQUAL OPPORTUNITY EMPLOYER**

Education, and whose employment service exceeds the lesser of 14 hours per week or 35 percent of the normal work week and more than 100 work days per year, excluding supervisory and all other employees.

BUREAU OF MEDIATION SERVICES
STATE OF MINNESOTA

ERNEST H. JONES, DIRECTOR

EHJ:el
cc: Donald F. Sandstrom (2) (Includes Posting)
John Giorgi
Albert L. Church
Dated at St. Paul, Minnesota
December 5, 1977

# STATE OF MINNESOTA

## BUREAU OF MEDIATION SERVICES

205 AURORA AVENUE
SAINT PAUL 55103

PHONE 612-296-2525

IN THE MATTER OF A PETITION FOR
INVESTIGATION AND CERTIFICATION OF
PUBLIC EMPLOYEES' APPROPRIATE UNIT
AND EXCLUSIVE REPRESENTATIVE:

Minnesota School Employees Association, St. Paul, Minnesota
   -and-
Independent School District No. 690, Warroad, Minnesota

CASE NO. 81-PR-947-A

## UNIT DETERMINATION

### Introduction

On Wednesday, April 15, 1981, a hearing was held by the Bureau of Mediation Services, State of Minnesota, at the Roseau County Courthouse, Roseau, Minnesota, pursuant to a petition filed by the Minnesota School Employees Association, St. Paul, Minnesota. The petition requested determination of an appropriate unit and the certification as exclusive representative for certain employees of Independent School District No. 690, Warroad, Minnesota.

At the hearing all interested parties were provided an opportunity to present testimony and evidence pertinent to the questions raised by the filing of the petition.

### Issues

1. What is the appropriate unit or units?

2. Which employees would properly fall within the appropriate unit?

3. Has the petitioner submitted the required showing of interest to warrant the conduct of an election?

### Positions of the Parties

Mr. Edward Dahle, on behalf of the MSEA, took the position that the appropriate unit should consist of cooks, custodians, secretarial/clerical, and teacher aides, as requested in the petition.



Mr. Robert A. Hughes, on behalf of the School District, took the position that the unit as requested by the petitioner is inappropriate and that there should be separate bargaining units for each occupational group and for bus drivers. He further contended that the petition, as filed, does not reflect the wishes of the employees and that the Bureau should conduct an informal investigation and/or election among each occupational group of employees to make a positive determination as to whether the petition reflects the wishes of the employees. Mr. Hughes further stated that Erwin Parker, Head Custodian, and Dorothy Jesme, Head Cook, are supervisory employees; that Emily Turner, Office Manager, is both supervisory and confidential; and that Judith Palm, Assistant to the Office Manager, and Dona Runnels, General Office Secretary, are confidential employees.

## Discussion

In determining appropriate units, the Bureau is directed by the statutory criteria established by Minn. St. 179.71, subd. 3. The application of these criteria to the employment relationship existing in school districts requires the balance between the community of interest of employees and excessive fragmentation of the bargaining structure. At some point the Bureau's general policy of separate units for office, food service, maintenance, and transportation employees conflicts with unit fragmentation because of the number of employees involved.

Minn. St. 179.71, subd. 3, emphasizes that in determining appropriate units the Director "shall place particular importance upon the history and extent of organization and the desires of the petitioning employee representatives." The PERB in Independent School District No. 480 and AFSCME Council No. 65 (Case No. 77-PR-802-A) reversed the Bureau's finding of four separate units of non-teaching personnel. It found that:

> "Section 179.71, subd. 3, makes it clear that the desires of the petitioning employee representative shall be given particular importance. * * * Pursuant to Minn. Stat. 179.71, subd. 3, the role of the Board as well as that of the Director is to determine if the unit petitioned for is 'an' appropriate bargaining unit. No provision of the Public Employment Labor Relations Act mandates that collective bargaining in a proposed unit which is otherwise appropriate is to be denied simply because another unit may be conceptually 'most' appropriate."

Findings

1.  Erwin Parker, Head Custodian, and Dorothy Jesme, Head Cook, are supervisory employees in accordance with Minn. St. 179.63, subd. 9, and are to be excluded from the unit.

2.  Emily Turner, Office Manager, is a supervisory employee in accordance with Minn. St. 179.63, subd. 9, and a confidential employee in accordance with Minn. St. 179.63, subd. 8, and is to be excluded from the unit.

3.  Judith Palm, Assistant to Office Manager, and Dona Runnels, General Office Secretary, are confidential employees in accordance with Minn. St. 179.63, subd. 8, and are to be excluded from the unit.

4.  The appropriate unit is determined to be:

    All employees of Independent School District No. 690, Warroad, Minnesota, who are not required to be certificated by the State Board of Education, whose employment service exceeds the lesser of 14 hours per week or 35 percent of the normal work week and more than 100 work days per year, excluding employees of the Transportation Department and supervisory and confidential employees.

5.  The petitioner has submitted the required showing of interest through valid authorization cards for the employees falling within the appropriate unit.

6.  It will not be possible for the Bureau to conduct an on-site election before the close of the 1980-81 school year; therefore, a mail ballot election will be conducted.

Order

As Director of the Bureau of Mediation Services, State of Minnesota, I order:

1.  A mail ballot election shall be conducted in accordance with an election order to be issued by the Bureau.

2. The employer shall immediately furnish to the Bureau and to the petitioner a list of the employees falling within the unit herein determined appropriate, along with their home mailing addresses.

3. The employer shall post this order at all work locations of the employees involved.

BUREAU OF MEDIATION SERVICES
STATE OF MINNESOTA

PETER E. OBERMEYER, DIRECTOR

PEO:el

cc: Stuart Blackorby (2) (Includes Posting)
Robert A. Hughes
Michael Pirsch
Edward Dahle

Dated at St. Paul, Minnesota,
May 27, 1981



**BMS**

BUREAU OF MEDIATION SERVICES

IN THE MATTER OF:  State of Minnesota  OCTOBER 16, 1990

Minnesota Teamsters Public and Law Enforcement Employees Union, Local No. 320, Minneapolis, Minnesota
- and -
County of Anoka, Anoka, Minnesota

BMS CASE NO. 90-PCE-3223

### CERTIFICATION OF RESULTS OF ELECTION

The tabulated results of a certification election conducted in the above-captioned matter by an agent of the Bureau of Mediation Services reveal the following results:

|  |  |
|---|---|
| ELIGIBLE EMPLOYEES | (557) |
| VOTES FOR TEAMSTERS UNION, LOCAL NO. 320 | (141) |
| VOTES FOR NO REPRESENTATION | (336) |
| TOTAL VOTES COUNTED | (477) |

Accordingly, **IT IS CERTIFIED THAT THE MINNESOTA TEAMSTERS PUBLIC AND LAW ENFORCEMENT EMPLOYEES UNION, LOCAL NO. 320, MINNEAPOLIS, MINNESOTA**, is **NOT** the exclusive representative of the following appropriate unit:

All clerical and technical employees of the County of Anoka, Anoka, Minnesota, who are public employees within the meaning of Minn. Stat. 179A.03, subd. 14, excluding supervisory, confidential, and "non-permanent" employees.

The Maintenance of Status Quo Order issued by the Bureau on **April 6, 1990**, is lifted in its entirety.

STATE OF MINNESOTA
Bureau of Mediation Services

PAUL W. GOLDBERG,
Commissioner

jj

cc: Robert Weisenburger
Jay McLinden
Ron Welde (2)
 (Includes Posting)
Bernard Steffen



# BUREAU OF MEDIATION SERVICES

IN THE MATTER OF A PETITION
FOR DETERMINATION OF AN
APPROPRIATE UNIT AND
CERTIFICATION OF EXCLUSIVE
REPRESENTATIVE

February 24, 2021

Law Enforcement Labor Services, Brooklyn Center, Minnesota
    - and -
Anoka County, Anoka, Minnesota

BMS Case No. 21PCE0336

## CERTIFICATION UNIT DETERMINATION ORDER

### INTRODUCTION

On September 9, 2020, the State of Minnesota, Bureau of Mediation Services (Bureau), received a petition from the Law Enforcement Labor Services, Brooklyn Center, Minnesota (Union). The petition requested determination of the appropriate and certification as exclusive representative for a group of employees of the Anoka County, Midwest Medical Examiner's Office, Anoka, Minnesota (Employer of County). On Thursday December 31, 2020, a pre-hearing was conducted to discuss the possibility of conducting the hearing via video conference and the logistics for conducting such a hearing. A hearing was subsequently conducted on Thursday, January 14, 2021, via a WebEx platform, with some witnesses presenting in the hearing room before the hearing officer in the offices of the Bureau. The parties timely submitted post-hearing briefs by Wednesday February 3, 2021, and the record was closed.

### APPEARANCES

At the hearing Scott Lepak, Attorney for the County, represented the Employer and Attorneys Kim Sobieck and Mark Schneider, represented the Union.

1380 Energy Lane, Suite 2, Minneapolis, Minnesota 55108-5253
651-649-5421 l FAX: 651-643-3013 l TTD: 1-800-627-3529 l mn.gov/bms

An Equal Opportunity Employer

## ISSUE

What is the appropriate bargaining unit to be determined?

## BACKGROUND

In its petition, the Union seeks to create a unit described as:

> "All Full-Time employees of the Midwest Medical Examiner's Office, Ramsey, Minnesota in the position of investigator, who are public employees within the meaning of Minn. Stat. 179A.03, Subd. 14, excluding supervisory and confidential employees."

The Midwest Medical Examiner's Office (MMEO) is an Agency within County Administration Department of Anoka County. During the Pre-Hearing Conference, the Union clarified their petition is to determine a unit consisting of full time "Office Investigators".

## POSITIONS OF THE PARTIES

The County maintains the full time Office Investigator is a fragment of the positions within the Medical Examiner's Office sharing a community of interest. In addition to the Office Investigator, the Forensic Technicians, Field Investigator, and Medical Secretaries are included within the same community of interest.

The Union argues the positions in question is a unique a community of interest, have submitted an interest in being represented by the Union and should be included in the appropriate unit rather than creating an Office wide unit of disinterested individuals..

## DISCUSSION

### APPLICABLE STANDARDS

Minn. Stat. §179A.09, addressing unit determination criteria provides in relevant part:

> **Criteria.** "In determining the appropriate unit, the commissioner shall consider the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, history, extent of organization, the recommendation of the parties, and other relevant factors. The commissioner shall place particular importance upon the history and

extent of organization, and the desires of the petitioning employee representatives."

## COMMUNITY OF INTEREST

Reviewing the criteria outlined in Minn. Stat. § 179A.09, subd. 1:

a) Principles and the coverage of uniform comprehensive position classification and compensation plans of the employees: There is no dispute the Office Investigators are within the County classification and compensation system. Forensic Technicians and Medical Secretaries are also within the system, while the Field Investigators are compensated according to their own salary schedule. Additionally, the three positions are grouped similarly within the classification compensation system with the Forensic Technicians at grade 11, the Office Investigators at grade 10 and the Medical Secretaries at grade 8. (Ex 1, #5)  Field Investigator compensation is comprised of an "on-call" payment for the time in which the Investigator is standing by, and they a "per scene" payment of $ 100 per incident. (Ex 17) For incidents extending beyond what is normally expected there may also be a $ 20 per hour supplement when approved. While the Forensic Technicians and Medical Secretaries participate in the same compensation and classification as the Office Investigators, the Field Investigators do not.

b) Professions and skilled crafts, and other occupational classifications: In reviewing the position description for the Office Investigator (Ex 8), it is determined not to be that of a profession or skilled craft. Not to deride the significance of the position but instead following the definitions within PELRA, it simply does not rise to the definition of profession or skilled craft. The same is true for the positions of Forensic Technician, and Medical Secretary, although their duties differ from that of the Investigators. The position of Field Investigator would be considered to be a profession or skilled craft had the degree in physical/social sciences or criminal justice been a requirement instead of a preference.

c) Relevant administrative and supervisory levels of authority: Exhibit 11 delineates the organizational structure of the County Medical Examiner's Office. For each position within the Medical Examiner's Office there is a Supervisor identified. Each Supervisor reports to either the Medical Examiner, who reports to the Director of the Midwest Medical Examiner's Office or to the Director himself. Medical Secretaries report directly tot eh Director of the MMEO who reports directly to the County Administrator. The Office Investigators and Field Investigators report to the Investigation Supervisor, who reports to the Medical Examiner, who then reports to the Director. Forensic Technicians report to the Morgue Supervisor who reports to the Medical Examiner. The dissimilarity of supervisory levels does not create a community of interest.

d) Geographical location: Exhibit 1, stipulation number 9 establishes the Forensic Technician, Office Investigator and Medical Secretary positions are all located at the MMEO facility in Ramsey Minnesota. Field Investigators work from their home offices located throughout the Counties served by the Medical Examiner. (T. Sheets) The geographic service area for the MMEO however is far greater than at the Ramsey Office and encompasses several Minnesota Counties. In addition to the positions already listed as being housed at the Ramsey facility, the Forensic Pathologists also work at this site. Under agreement between the parties as identified in Exhibit 1, the Forensic Pathologists are to be excluded from an appropriate unit. (Ex 1, Stip 2) In the instant case, although the varying work locations for the MMEO are throughout several counties, the Office Investigators sought by the Union are all located in the Ramsey office and do not perform any "field" work.

e) History: MMEO employees are currently unrepresented. At least two previous attempts have occurred to seek representation for technical and clerical employees of Anoka County which have failed to establish a unit and bargaining relationships. (90PCE3223, 09PCE0284) There is currently no history with the proposed unit.

f) Extent of organization: This means the groupings of employees among whom the union has support and upon which it has focused its organizing efforts. State of Minnesota, State Board of Public Defense, and Teamsters Local 320, BMS Case No. 98PCE0490 (March 3, 1999). In the instant case the Union has support from the Office Investigators of the MMEO. This factor supports the Union's position there is a community of interest.

g) The recommendation of the parties: The Union's recommendation is to create an appropriate unit consisting of full time Office Investigators. The Employer's recommendation is to certify an appropriate unit consisting MMEO employees except the Forensic Pathologists which the parties have agreed to exclude. These positions offset each other and provide no guidance in this case.

h) Other relevant factors: The Employer raises the issue of over fragmentation, a consideration not identified in §179A.09 however a consideration the Bureau has used for decades. Determining the appropriate unit requires the balance between the community of interest of employees and excessive fragmentation of the bargaining structure. The Bureau has developed a decision policy preference for the establishment of four basic units in County government. Absent compelling reason otherwise, units of essential, highway maintenance and public works, social service department, and county-wide office-clerical-administrative, technical, and professional employees will generally be determined as appropriate.

This policy favors the establishment of appropriate units which are based on broad occupational groups -essential, public works, and office-clerical-administrative, technical, and professional. The exception to this broad occupational group

standard, is our finding that all employees of a social services department make-up a separate unit. (99PCE0402) This bargaining structure preference of the Bureau accurately applies the unit determination criteria of the PELRA. Here however, we find the Employer has entered into stipulations whereby additional units of essential employees were formed, negating a consideration for over fragmentation.

## CONCLUSION

As with the exception to Bureau policy for social services, MMOE employees share a uniqueness not found in a more general clerical/technical unit description. The Employer's objection to the Union's description is not to follow the broad Countywide policies of the Bureau but instead shoehorn the policy into fitting within the MMOE. The uniqueness of the position, the work performed, the separate location from other County employees and the desires of the petitioning union favors a determination a broad clerical/technical unit should not be created.

We also find persuasive the fact that an appropriate unit consisting of the entire clerical/technical employee class was certified and the parties never reached a collective bargaining unit. We take this as strong evidence that a broad bargaining unit would not lead to stable and constructive labor relations.

Additionally, the Unions desire to include only a portion of a job class is not appropriate. The position of Office Investigator does not change for a public employee serving less than full time. The record is void of any reference to differing job duties, compensation structure, levels of authority and responsibility, geographic location, or other consideration to suggest differentiation.

Having established multiple essential units with the County diminishes the argument against fragmentation. The particular importance on desires of the petitioning employee representative, and history and extent of organization strongly favor the determination of an appropriate unit of Office Investigators. The principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, relevant administrative and supervisory levels of authority, and geographical location all favor and disfavor the Employer's arguments given some employees share interest while others do not.

The petitioner's position is upheld with the exception of excluding all but full-time employees. A unit of all Office Investigators is appropriate. Excluded from the unit are Field Investigator, Forensic Technician and Medical Secretary. The parties had previously stipulated to the exclusion of the Forensic Pathologist.

## FINDING AND ORDERS

1.    The appropriate unit is described as:

    <u>All Office Investigators employed by the Anoka County Midwest
    Medical Examinator's Office, Anoka, Minnesota, who are public
    employees within the meaning of Minn. Stat. 179A.03, subd. 14,
    excluding supervisory, confidential, and all other employees.</u>

2.    The Bureau shall conduct a mail ballot election among the eligible employees in
    accordance with the attached Mail Ballot Election Order.

3.    The Employer shall post this Order at the work locations of the employees involved.

STATE OF MINNESOTA
Bureau of Mediation Services

JANET L. JOHNSON
Commissioner

s/ *Michael Stockstead*

Michael Stockstead
Hearing Officer

cc:    Scott Lepak
    Kim Sobieck
    Mark Schneider

## POSTING

## THE EMPLOYER SHALL MAKE COPIES OF THIS ORDER UPON RECEIPT AND POST IT AT THE WORK LOCATION(S) OF ALL INVOLVED EMPLOYEES.